# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS DIVISION

| | |
|---|---|
| **PRENTISS ARNOLD WALLACE** | **17-407** |
| Petitioner's Name & Prison Number | |
| | **Civil Action Number** |
| **540649** | **SECT. I MAG. 5** |
| State Court Docket Number | |
| | **Judge** |
| VS | |
| **KEITH DEVILLE** | |
| Respondent (person having custody of petitioner) | **Magistrate Judge** |

### PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY

1.  The name and address of your present place of confinement:

    Winn Correctional Center

    P.O. Box 1435

    Winnfield, Louisiana 71483


    Are you presently in custody pursuant to the conviction(s) or sentence that you seek to challenge here?   YES <u>XX</u>   NO __

2.  With regard to the conviction(s) or sentence you are attacking state:

    **A.**  The name, address and parish of the court entering the judgment of conviction:

    Twenty-Second Judicial District Court

    P.O. Box 1090

    Covington, Louisiana 70434-1090

    **B.**  The date of judgment of conviction: <u>January 14, 2015</u>

_____ Fee _Paid_
_____ Process_____
_X_ Dktd_____
_____ CtRmDep_____
_____ Doc. No._____

**TENDERED FOR FILING**

**JAN 1 7 2017**

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

1

**C.**   The length of your sentence: <u>Thirty years at hard labor.</u>

The nature of each offense you were convicted of:

<u>La. R.S. 40:967(A) & La. R.S. 14:27—"Attempted Possession With Intent To Distribute</u>
<u>Cocaine"</u>

**D.**   Whether you were convicted of each offense following a plea of:

  **i.**    Not Guilty        <u>XX</u>

  **ii.**   Guilty            __

  **iii.**  Nolo contendere   __

If you entered a guilty plea to one count or indictment and a not guilty to another count or
indictment, give detail: <u>N/A</u>

**E.**   If you pleaded not guilty, what kind of trial did you have? (check one)

  **i.**    Jury          <u>XX</u>

  **ii.**   Judge only    __

**F.**   Did you testify at trial?  YES __  NO <u>XX</u>

**3.   Statute of Limitations**

28 U.S.C. § 3344(d) establishes a 1 year statute of limitations for an application for a writ of
habeas corpus. Is this application barred by this 1-year period of limitation?

YES __  NO <u>XX</u>

If not, state why not?

<u>This application is submitted within one year of Petitioner's sentence becoming final.</u>

**4.   Grounds for Present Petition**

State concisely each and every ground on which you claim that you are being held unlawfully and summarize briefly the facts supporting each ground. You may attach pages stating additional grounds and facts supporting same.

WARNING: Absent exceptional circumstances, if you fail to set forth all grounds in this petition, you will be barred from presenting additional grounds at a later date. *See* **28 U.S.C. § 2244**.

**Ground one:**  The evidence is insufficient to support the verdict of attempted possession with attempt to distribute cocaine.

Supporting FACTS (state briefly without citing cases or law)

**Ground two:**  The trial court erred in admitting other crimes evidence.

Supporting FACTS (state briefly without citing cases or law)

**5.   Direct Appeals**

**A.**   Did you file a direct appeal from your judgment of conviction or sentence?
YES XX  NO __

**B.**   If you did file a direct appeal, for your initial appeal, answer the following:

  **i.**   The name and address of the court where you first appealed:
  First Circuit Court of Appeal of Louisiana
  P.O. Box 4408
  Baton Rouge, Louisiana 70821-4408

  **ii.**   The result of this appeal:  Judgment affirmed.

  **iii.**   The date of the decision: December 23, 2015

  **iv.**   The citation and/or docket number of the decision (if known):
  State v. Wallace, La. App. LEXIS 2658 (La. App. 1 Cir., Dec. 23, 2015.)

3

    **v.**    The grounds raised in your present habeas petition that were raised in this direct appeal:

        1.  Evidence is insufficient to support conviction.

        2.  Trial court erred in admitting other crimes evidence.

**C.**  If you sought review of your appeal by a higher court, answer the following:

    **i.**    The name and address of the court where you next applied for review:

        Louisiana Supreme Court

        400 Royal St., Ste. 4200

        New Orleans, Louisiana 70130-8102

    **ii.**   The result of this appeal: Writ not considered.

    **iii.**  The date of the decision: April 4, 2016.

    **iv.**  The citation and/or docket number of the decision (if known):

        State v. Wallace, La. App. LEXIS 803 (La. Apr. 4, 2016.)

    **v.**    The grounds raised in your present habeas petition that were raised in this earlier application for review:

        1.  Evidence was insufficient to support conviction.

        2.  Trial court erred in admitting other crimes evidence.

**D.**  If you filed a petition for certiorari in the US Supreme Court please answer the following with respect to each such petition:

    **i.**    The result: _____

    **ii.**   The date of the result: _____

    **iii.**  The citation and/or docket number (if known): _____

    **iv.**  The grounds raised in your present habeas petition that were raised in this earlier appeal: _____

4

6. **Post-Conviction or other Collateral Review**

   A. Other than the direct appeals described above, have you previously filed any petitions, applications, or motions with respect to your judgment of conviction or sentence in the state court? YES ___ NO XX

   B. If so, give the following information with regard to the first petition, application, or motion you filed:

      i. The name and address of the court.

      _____

      _____

      _____

      ii. The name of the proceeding.

      _____

      iii. The date it was filed. _____

      iv. The grounds raised in your present habeas petition that were raised.

      _____

      v. Did you receive an evidentiary hearing? YES ___ NO ___

      vi. The result. _____

      vii. Did you appeal or file an application for review to higher state courts having jurisdiction?
      YES ___ NO ___

      viii. If not, explain briefly why you did not.

      _____

      ix. If so, name the court(s) to which you applied, the date of the final result in each court, and the result in each court:

      _____

5

C.  If you filed a second petition, application, or motion, give the following information with regard to that filing:

   i.  The name and address of the court:

       _____

   ii.  The nature of the proceeding:

       _____

   iii.  The date it was filed: _____

   iv.  The grounds raised in your present habeas petition that were raised:

       _____

   v.  Did you appeal or file an application for review to higher state courts having jurisdiction?

       YES ___ NO ___

   vi.  if not, briefly explain why you did not:

       _____

   vii.  If so, name the court(s) to which you applied, the date of the final result in each court, the result in each court:

       _____

7. **Exhaustion of State Remedies**

Generally, any ground that you seek to present here must have first been presented to the state courts. See 28 U.S.C. § 2254(b). Attach copies of previous petitions, applications, or motions filed with the state courts where you presented each of the grounds listed in Part 5. If any of the grounds listed in Part 5 above have not been previously presented to the highest state court that has the power to consider it, state briefly what grounds were not so presented, and give your reasons for not presenting them:

Grounds were exhausted in State Court.

8. **Prior Federal Habeas Petitions**

   A. Have you filed any other petition in any federal court where you sought to attack the same conviction(s) or sentence you are challenging here?   YES ___ NO XX

   B. If so, give the following information:

      i. The name and address of the court where it was filed:

      ii. The docket number:

      iii. The grounds raised:

9. **Other Pending Actions**

    **A.**  Do you have any petition or appeal pending in any court, either state or federal, as to the judgment you are attempting to attack here?  YES ___ NO <u>XX</u>

    **B.**  If so, please give the following information:

        **i.**  The name and address of the court:

        _____

        **ii.**  The nature of the proceeding:

        _____

10. **Attorney Representing Petitioner**

    Give the name and address of each attorney who represented you in the following stages of the judgment attacked herein:

    **A.**  At the preliminary hearing:

        <u>Allan Breslin</u>

        <u>233 Robinhood Rd.</u>

        <u>Covington, Louisiana 70433-4762</u>

    **B.**  At the arraignment and plea:

        <u>Allan Breslin</u>

        <u>233 Robinhood Rd.</u>

        <u>Covington, Louisiana 70433-4762</u>

    **C.**  At trial:

        <u>Allan Breslin</u>

        <u>233 Robinhood Rd.</u>

        <u>Covington, Louisiana 70433-4762</u>

    **D.**  At sentencing:

        <u>Allan Breslin</u>

        <u>233 Robinhood Rd.</u>

        <u>Covington, Louisiana 70433-4762</u>

**E.** On appeal:

Cynthia K. Meyer

320 N. Carrollton Ave., Ste. 200

New Orleans, Louisiana 70183

**F.** In any post-conviction proceeding:

**G.** On appeal from any adverse ruling in a post-conviction proceeding:

## 11.  Other Sentences

**A.** Were you sentenced for more than one offense in the same court and at the same time? YES __ NO XX

**B.** Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?     YES __ NO XX

    **i.** If so, give the name and location of the court which imposed the sentence to be served in the future:

    **ii.** Give the date and length of the said sentence: _____

    **iii.** Have you filed, or do you contemplate filing any petition attacking the judgment which imposed the sentence to be served in the future?   YES __ NO __

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Respectfully submitted,

S/

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___ day of ___ / 2 ___ 2017.

S/

10

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

**PRENTISS ARNOLD WALLACE**          Civil Action No. _____

**VERSUS**          JUDGE _____

**WARDEN, KEITH DEVILLE**          MAG. JUDGE _____

---

## BRIEF IN SUPPORT OF PETITION
## FOR WRIT OF HABEAS CORPUS

---

**MAY IT PLEASE THE COURT:**

NOW INTO COURT comes Petitioner, <u>Prentiss Arnold Wallace $^{\#}$570521</u>, in proper person and pursuant to **28 § U.S.C. 2254**, who seeks a Writ of Habeas Corpus to issue from this Honorable Court. Petitioner is currently in the custody of the Louisiana Department of Corrections at Winnfield Correctional Center in Winnfield, Louisiana. Petitioner complains that his conviction was obtained in violation of the United States Constitution. In support of his petition, he respectfully submits the following:

TENDERED FOR FILING

JAN 1 7 2017

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................................ 1

STATEMENT OF THE CASE ............................................................................... 1

ONE YEAR LIMITATION SET FORTH BY THE AEDPA .................................. 6

CLAIMS PRESENTED ......................................................................................... 7

    Claim No. One......................................................................................... 7

    Summary of Argument ............................................................................ 7

    Claim No. Two ........................................................................................ 7

    Summary Of Argument ........................................................................... 7

ARGUMENT ......................................................................................................... 8

    Claim No. 1 ............................................................................................. 8

    Claim No. 2: .......................................................................................... 17

CONCLUSION .................................................................................................... 21

PRAYER FOR RELIEF ....................................................................................... 23

PROOF OF SERVICE ......................................................................................... 24

# APPENDICES

**APPENDIX A**—Appellate Brief
                Filed: August 24, 2015

**APPENDIX B**—Judgment: Louisiana First Circuit Court of Appeal
                Rendered: December 23, 2015

**APPENDIX C**—Judgment: Louisiana Supreme Court
                Rendered: April 4, 2016

i

## FEDERAL CODE

**28 § U.S.C. 2254** ...................................................................................................... 1

**28 USCS § 2254(d)(1)** ................................................................................... 21, 22

## FEDERAL CASES

*Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985) ..................................... 10

*Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).. 7, 20

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012) ............... 10

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).......... 8

*Jackson*, 443 U.S. at 319 .................................................................................... 8, 9

*Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324)........................................................................................................................... 9

*McDaniel v. Brown*, 558 U.S. 120, 131, 130 S. Ct. 665, 672, 175 L. Ed. 2d 582 (2010).................................................................................................................... 9

*Parker v. Matthews*, 132 S. Ct. 2148, 2152, 183 L. Ed. 2d 32(2012).................... 10

*Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U.S. at 324 n. 16) ............................... 9

*Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005)............................................. 9

*Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (*quoting Herrera v. Collins*, 506 U.S. 390, 402, 113 S. Ct. 853, 122 L. Ed. 2d 203(1993) ................... 10

*United States v. Young*, 107 F. App'x. 442, 443 (5th Cir.2004) (*citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)) ................................................ 9

*Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995)................................................ 10

*Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir.2011 ........................................... 8

*Yates v. Evatt*, 500 U.S. 391, 403, 111 S. Ct. 1884, 1893, 114 L. Ed. 2d 432 (1991) ................................................................................................................................ 20

## LOUISIANA CASES

*State v. Code*, 627 So.2d 1373, 1384 (La. 1993) ..................................................... 20

*State v. Colomb*, 747 So.2d 1074, 1075-76 (La. 1999) ........................................... 19

*State v. Cummings*, 46,038 (La. App. 2d Cir. 1/26/11), 57 So. 3d 499, <u>writ denied</u>, 11-0341 (La. 6/17/11), 63 So. 3d 1037 .................................................................... 16

*State v. Gibson*, 391 So. 2d 421 (La. 1980) ............................................................. 20

*State v. Housley*, 04-347 (La. App. 5 Cir. 9/28/04), 884 So. 2d 1204, 1207 ......... 11

*State v. Jackson*, 625 So.2d 146, 148 (La. 1993) .................................................... 19

*State v. Lewis*, 48,373 (La. App. 2d Cir. 9/25/13), 125 So.3d 482 .......................... 17

*State v. Nelson*, 46,915 (La. App. 2 Cir. 2/29/12), 86 So.3d 747, 750 ................... 11

*State v. Prieur*, 277 So. 2d 126, 128 (La. 1973) ..................................................... 18

*State v. Stephens*, 47,978 (La. App. 2d Cir. 5/29/13), 114 So.3d 1265, <u>writ denied</u>, 13-1551 (La. 1/17/14), 130 So.3d 342 ..................................................................... 16

*Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). 20

## PROCEDURAL ARTICLES

**La. C.Cr.P. Art. 720** ............................................................................................. 17

**La. C.E. Art. 404(B)** ....................................................................................... 17, 18

**La. C.E. Art. 404(B)(1)** ................................................................................... 18, 19

## RULES

**La. S.Ct. Rule X§5** ................................................................................................. 5

## STATEMENT OF JURISDICTION

Jurisdiction is vested in this Honorable Court the hear this Petition for Writ of Habeas Corpus, pursuant to **28 § U.S.C. 2254**, in lieu of Petitioner being presently unconstitutionally detained and imprisoned at the Winnfield Correctional Center by Respondent Keith Deville.

## STATEMENT OF THE CASE

### FACTS OF THE CRIME

In 2009, Petitioner sold crack cocaine to an undercover police officer. He pled guilty to this offense.

On September 5, 2013, Sergeant Dennis Bush, with the Slidell Police Department, received information that Petitioner and Leo Charles were selling crack cocaine in the Lincoln Park neighborhood and the Pontchartrain Drive area in Slidell. Sergeant Bush also had information that Petitioner and Mr. Charles were in a blue Nissan Xterra with an Alabama license plate.

Sergeant Bush spotted the Xterra a short time later and followed it. Leo Charles was driving and Petitioner was in the front passenger seat. The Xterra pulled over near Nassau Drive. An unknown female approached the driver's side on foot, a quick hand-to-hand transaction occurred between the female and driver.

1

Suspecting he witnessed a drug transaction, Sergeant Bush followed the Xterra and radioed other officers in the area to assist with the mobile surveillance.

Sergeant Bush followed the Xterra to the Westchester neighborhood, where it pulled to the side of the road on Olive Drive. Sergeant Bush watched Petitioner get out of the Xterra and walk to the driver's side of a silver Saturn parked in a residence driveway. Petitioner conducted what appeared to be a quick hand-to-hand transaction with the driver of the Saturn, later identified as Lindsay Rolston. Petitioner got back in the Xterra and left. About forty-five seconds later, Rolston left, traveling in the same direction as the Xterra. Sergeant Bush and his captain followed Rolston, while other officers followed the Xterra.

A few miles down the road, Rolston pulled into an Exxon station parking lot, and Sergeant Bush affected a traffic stop. Sergeant Bush asked Rolston if she had drugs in the car and she replied that she did; he asked for permission to search her purse and she consented. Sergeant Bush found in Rolston's purse seven Alprazolam (Xanax) pills and a small plastic bag with cocaine residue on it. The bag, or portion of a baggie was small, and would have held no more than a gram of cocaine.

Detective Richard Walden, with the Slidell Police Department, was one of the officers asked to follow the Xterra. Detective Daniel Seuzeneau and Detective Michael Deckleman, both with the Slidell Police Department, also followed the

2

Xterra. The officers had instructions to stop the Xterra. There were some other officers in pursuit, as well, including Detective Cole.

On Old Spanish Trail, near the I-10, several officers attempted to stop the Xterra. With lights activated by some marked units, the officers attempted to block the Xterra in the front and in the back. Leo Charles maneuvered around the vehicle in front of him and fled, setting off a high-speed chase.

Mr. Charles sped off Old Spanish Trail onto the service road, traveling the wrong direction on a one-way street. At this point, the Petitioner began throwing items out of the passenger-side window. Leo Charles made his way onto the interstate (I-10) and headed toward the I-10 twin-span bridges (connecting Slidell and New Orleans). Mr. Charles barreled down the bridge, heading toward New Orleans, reaching speeds of 100 miles per hour. By this time, as many as a dozen officers were engaged in the pursuit.

When Mr. Charles reached New Orleans East, he took the Michoud Boulevard exit. He took a left, which brought him back over the I-10. Just as Mr. Charles cleared the overpass, he lost control of the vehicle. The Xterra jumped the curb and left the roadway. It continued to roll through the dirt and grass before coming to a stop near a clearing in the woods. The Petitioner and Leo Charles had jumped from the Xterra before it had stopped rolling and fled on foot. They were both eventually apprehended.

Detective Walden searched the Xterra and found, under the driver's seat, a piece of cellophane containing cocaine residue. The cellophane was likely the bottom portion of a cigarette pack.

## FACTS OF THE PROCEEDINGS

The State charged the defendant, Prentiss Arnold Wallace, by bill of information with possession with intent to distribute cocaine, a violation of **La. R.S. 40:967(A)(1)**.

The State filed a pre-trial motion to introduce evidence of Petitioner's 2009 conviction for distribution of cocaine. The trial court found this evidence inadmissible. The jury in this first trial deadlocked and a mistrial was declared.

The State filed a second motion to introduce the same evidence regarding Petitioner's 2009 conviction for distribution of cocaine. The same trial judge then found the evidence admissible. The matter proceeded to a second trial in which the jury found Petitioner guilty of the responsive verdict of attempted possession with intent to distribute cocaine. *See* **La. R.S. 14:27(D)(3)** and **La. R.S. 40:979(A)**.

The trial court denied Petitioner's post-verdict judgment of acquittal. The State filed a habitual offender bill of information, alleging the Petitioner had prior convictions for possession of cocaine and distribution of cocaine. The court adjudicated Petitioner a third-felony habitual offender then imposed a sentence of thirty years imprisonment at hard labor.

4

Petitioner appealed the conviction, designating two assignments of error. The First Circuit Court of Appeal of Louisiana affirmed the conviction, habitual offender adjudication, and sentence on December 23, 2015.

Petitioner applied for Certiorari and/or Review in the Supreme Court of Louisiana. Writ was untimely filed pursuant to **La. S.Ct. Rule X§5** and denied on April 4, 2016.

The Supreme Court of Louisiana reconsidered and affirmed the denial of Certiorari on June 3, 2016.

Petitioner did not seek collateral review.

Petitioner now seeks relief in the form of Writ of Habeas Corpus in this Honorable Court.

## ONE YEAR LIMITATION SET FORTH BY THE AEDPA

Petitioner's conviction became final on January 23, 2016.  This being thirty days after The First Circuit Court of Appeal of Louisiana denied his claims on direct review.

This 2254 Petition is timely filed within the one-year limitation set forth by the AEDPA.

## CLAIMS PRESENTED

## CLAIM NO.  ONE

The State of Louisiana committed reversible error utilizing an unreasonable determination of the facts in light of the evidence presented in affirming that the evidence was sufficient to support the conviction.

## SUMMARY OF ARGUMENT

The conviction for attempted possession with intent to distribute cocaine was improper given the evidence.  The State offered no proof that Petitioner attempted to possess or attempted to distribute cocaine.

## CLAIM NO.  TWO

The State of Louisiana committed reversible error utilizing an unreasonable determination of the facts in light of the evidence presented in affirming the use of other crimes evidence.  The State of Louisiana misapplied the harmless error test announced in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

## SUMMARY OF ARGUMENT

The trial court erred in admitting other crimes evidence of Petitioner's prior conviction for distribution of cocaine.  The facts of his prior crime were not similar enough to the facts of the case at bar to render this evidence more probative than

7

prejudicial.  The admission of this evidence was not harmless error as evidenced by the fact the first trial in which this evidence was excluded resulted in a deadlocked jury, while the second trial, in which evidence regarding the prior cocaine conviction was allowed to be introduced, ended with a conviction of attempted possession with intent to distribute cocaine.


## ARGUMENT


### CLAIM NO. ONE

The evidence is insufficient to support the verdict of attempted possession with intent to distribute cocaine.


### *JACKSON STANDARD OF REVIEW*

Under *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), a federal habeas court addressing an insufficiency of evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir.2011; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir.2008.

Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U.S. at 324 n. 16). The courts consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S. Ct. 665, 672, 175 L. Ed. 2d 582 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x. 442, 443 (5th Cir.2004) (*citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.

*Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985).  In addition, "[t]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (*quoting Herrera v. Collins*, 506 U.S. 390, 402, 113 S. Ct. 853, 122 L. Ed. 2d 203(1993) (emphasis added)).

Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152, 183 L. Ed. 2d 32(2012); *see also Coleman v. Johnson*, 132 S. Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012).

In the instant case, the State failed to prove that Petitioner ever possessed or attempted to possess the cellophane discovered under the rear seat portion of the driver's seat or that the refuse discarded from the Xterra was cocaine.  Moreover, the State also failed to prove that Petitioner had specified intent to distribute cocaine.  There was no direct evidence in this case—all of the evidence was circumstantial.

Petitioner was convicted of attempted possession of cocaine with intent to distribute of cocaine in violation of **La. R.S. 40:967 (A)(1)** and **La. R.S. 14:27**.

**La. R.S. 40:967** provides that it shall be unlawful for any person to:

… knowingly or intentionally… [to]…distribute, or dispense,… a controlled dangerous substance… classified in Schedule II[.]"

Cocaine and its derivatives are listed in Schedule II. **La. R.S. 40:964**. To present sufficient evidence of distribution of a controlled dangerous substance (CDS), the State must prove the following elements:  (1) delivery or physical transfer of the CDS to its intended recipient; (2) guilty knowledge of the CDS at the time of the transfer; and (3) and the exact identity of the CDS. *State v. Nelson*, 46,915 (La. App. 2 Cir. 2/29/12), 86 So.3d 747, 750.

**La. R.S. 14:27(A)** defines an attempt as:

"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended…"

**La. R.S. 14:10(1)** defines specific intent as:

"intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."

Thus, to be found guilty of attempted distribution of cocaine, the State must prove that a Petitioner had specific intent to distribute a controlled dangerous substance identified as cocaine, and do or omit an act for the purpose of and tending directly toward the accomplishing of this act. *See*, *State v. Housley*, 04-347 (La. App. 5 Cir. 9/28/04), 884 So. 2d 1204, 1207.  The evidence presented by the State in this case was inadequate to carry this burden of proof.

11

Detective Bush testified that he observed a white female walk up to the driver's side of the Xterra where a "hand-to-hand transaction of some sort followed".[1]   Detective Bush opined that this was a "possible drug transaction".[2] No one followed this white female and Detective Bush did not know "what happened" to her.[3]   Detective Bush followed the Xterra to the Westchester neighborhood where he observed Petitioner walk over "to a silver Saturn, which was in the driveway of a residence, met with a white female who was seated in the driver's seat of the Saturn.  A quick hand-to-hand transaction occurs of a small object."[4]  Petitioner got back into the Xterra and left.[5]

Detective Bush followed the Saturn, which pulled into the parking lot of a gas station.[6]  This white female, later identified as Lindsay Rolston, was stopped and gave officers permission to search her car and purse.[7]  Seven Xanax pills and a "small plastic bag with cocaine residue" were recovered from Ms. Rolston's purse.[8]  The bag had not been torn open, nor was a twist tie found that would have been used to hold the bag closed.[9]  Ms. Rolston was not in possession of any items

---

[1] (R. P. 664)
[2] (R. P. 664)
[3] (R. Pp. 664, 674)
[4] (R. P. 664)
[5] (R. P. 665)
[6] (R. P. 665)
[7] (R. P. 665)
[8] (R. P. 665)
[9] (R. P. 670)

that are normally used to ingest cocaine, such as a straw, razor blade, or a rolled up dollar bill.[10]

Mr. Rolston was arrested and explained to police that Petitioner, whom she knew, was passing down the street as she was going to get cigarettes.[11]  She got a cigarette from Petitioner, and then went to the store to get more cigarettes.[12]  Ms. Rolston denied that the cocaine or Xanax came from Petitioner.[13]

Meanwhile, Detective Richard Walden followed the Xterra and observed several "items thrown out of it".[14]  Detective Walden admitted that he did not have any idea what was being tossed out of the Xterra.[15]  Although there were several police vehicles following the Xterra at this point, Detective Walden did not stop to look at the items being discarded, nor did he request other officers look at the items being discarded.[16]  There were twelve officers involved in the pursuit of the Xterra.[17]

Detective Michael Deckleman was a passenger in one of the cars following the Xterra.[18]  He saw "some type of clear cellophane with a white substance in that we believe to be crack cocaine."[19]  He did not know if anyone went back to look

---

[10] (R. P. 670)
[11] (R. P. 766)
[12] (R. P. 768)
[13] (R. P. 769)
[14] (R. P. 681, 682)
[15] (R. P. 685, 690)
[16] (R. P. 682, 686)
[17] (R. P. 687)
[18] (R. P. 693)
[19] (R. P. 694)

for the evidence that was discarded.[20] Detective David Seuzeneau, was driving the car in which Detective Deckleman was riding.[21] He did not see what was being discarded from the Xterra.[22] Detective John Cole also participated in the pursuit of the Xterra.[23] He never saw anything thrown out of the Xterra; however, he looked for the refuse discarded from the Xterra later that night and the next morning but did not find anything.[24] After stopping the Xterra, a piece of cellophane that looked "like the bottom of a cigarette pack" was found under the rear portion of the driver's seat.[25] This piece of cocaine tested positive for cocaine residue.[26] The State attempted to use the piece of cellophane recovered from Ms. Rolston's purse and the piece of cellophane recovered from the Xterra to prove that the refuse discarded from the Xterra was cocaine. However, this conclusion is not reasonable. Detective Bush followed Ms. Rolston after her contact with Petitioner. He never lost sight and stopped her five minutes later. She was not in possession of any paraphernalia that could be used to ingest cocaine, nor was there any evidence that she appeared to be under the influence of cocaine. The only reasonable conclusion form this evidence is that Mr. Rolston obtained a cigarette

---

[20] (R. P. 699)
[21] (R. P. 703)
[22] (R. P. 706)
[23] (R. P. 752)
[24] (R. P. 752, 754)
[25] (R. P. 684)
[26] (R. P. 722)

or perhaps the Xanax tablets from Petitioner, rather than cocaine.  The State presented no evidence to refute this reasonable hypothesis.

The State inferred that the piece of cellophane containing the cocaine residue that found in the Xterra had made its way back into the Xterra after being discarded.  This piece of cellophane was not sealed and did not appear to have been sealed.  The State was unable to produce any evidence of the contents of the refuse that was discarded from the Xterra; rather, the State suggests that the refuse that was being discarded from the Xterra was unsealed powdered cocaine.  During trial, the prosecutor referred to powdered cocaine being like Sweet and Low and as such could be easily blown away.  The State asked the jury to conclude that a drug dealer packaged cocaine for sale without sealing the individual packets.  This is not a reasonable conclusion.  The only reasonable hypothesis is that at some point prior to the Xterra being searched, the driver discarded the bottom of a cellophane cigarette wrapper under the seat.

The State failed to prove the identity of the refuse discarded from the Xterra.  Clearly the jury was confused about the identity of the refuse discarded from the Xterra as evidenced by the jury's question as to whether "any witnesses [saw] a powdery substance come out of the car" when the refuse was discarded.[27]

---

[27] (R. P. 819)

A review of the evidence indicates that the State failed to exclude the reasonable hypothesis that Ms. Rolston obtained something other than cocaine from Petitioner and at some point prior to the Xterra being searched, the driver discarded the bottom of a cellophane cigarette wrapper under the seat.

In addition to failing to produce any evidence to identify the refuse discarded from the Xterra, the State failed to produce any other evidence that Petitioner had specific intent to distribute cocaine.   Five factors are used to determine whether circumstantial evidence is sufficient to prove intent to distribute a controlled dangerous substance:

(1) did the Petitioner distribute or attempt to distribute the drug;

(2) was the drug in a form usually associated with distribution;

(3) does the amount of drug create an inference of intent to distribute;

(4) did testimony establish that the amount of drugs found in the Petitioner's possession was inconsistent with personal use; and

(5) was there any other evidence of intent to distribute, such as scales or packaging materials.

*State v. Cummings*, 46,038 (La. App. 2d Cir. 1/26/11), 57 So. 3d 499, writ denied, 11-0341 (La. 6/17/11), 63 So. 3d 1037.

Other relevant factors considered are street value and drug dosage.  *State v. Stephens*, 47,978 (La. App. 2d Cir. 5/29/13), 114 So.3d 1265, writ denied, 13-1551 (La. 1/17/14), 130 So.3d 342.  Possession by itself does not constitute intent to

distribute unless the quantity is so large as to preclude any other inference. *State v. Lewis*, 48,373 (La. App. 2d Cir. 9/25/13), 125 So.3d 482.

As discussed above, there is no evidence that Petitioner distributed cocaine to the female who walked up to the Xterra or to Mr. Rolston. The record is devoid of any evidence as to amount the of cocaine allegedly discarded or any other evidence of intent to distribute, such as scales or packaging materials. The residue of cocaine found on the piece of cellophane under the driver's seat of the Xterra is not such a large quantity of cocaine as to preclude the inference that the cocaine in the Xterra was for personal use.

A review of the record as a whole indicates that the evidence presented by the State is insufficient to support the verdict of attempted possession with intent to distribute cocaine.

## CLAIM NO. 2:

**The trial court erred in admitting other crimes evidence.**

As pointed out above, Petitioner's first trial ended with a deadlocked jury. Prior to the first trial, the State filed a Notice of Intent to Use Evidence of Other Crimes, pursuant to **La. C.Cr.P. Art. 720** and **La. C.E. Art. 404(B)**. This evidence consisted of Petitioner's 2009 conviction for distribution of cocaine. The trial judge determined that this evidence was not admissible. After the first trial ended in a mistrial, the State again filed a motion to introduce the same other

17

crimes evidence regarding Petitioner's 2009 conviction for distribution of cocaine. Despite the other crimes evidence and the facts being exactly the same, this time the same trial judge found the other crimes evidence was admissible. Given the lack of evidence and weakness of the State's case, the prejudicial value of this evidence is what caused the jury to find Petitioner guilty.

Under Louisiana law, courts may not admit evidence of other crimes, wrongs or acts of the Petitioner in order to show that he or she is a person of bad character who has acted in conformity therewith. **La. C.E. Art. 404(B)(1).** Evidence of other crimes, wrongs, or acts is generally inadmissible to impeach the character of the accused. **La. C.E. Art. 404(B)**. The State may nonetheless introduce evidence of other crimes, wrongs or acts if it establishes an independent relevant reason for its admissibility such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or …when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." **La. C.E. Art. 404(B)(1)**. Even when other crimes are relevant, the probative value of unrelated offenses must be weighed against their possible prejudicial effect. ***State v. Prieur***, 277 So. 2d 126, 128 (La. 1973).

The trial judge stated that she allowed the introduction of this other crimes evidence because intent was issue in this case.

18

In *Prieur*, the Louisiana Supreme Court held that, while evidence of other acts of misconduct is generally not admissible to show Petitioner's bad character, such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding. *See also*, **La. C.E. Art. 404(B)(1)**; *State v. Colomb*, 747 So.2d 1074, 1075-76 (La. 1999); *State v. Jackson*, 625 So.2d 146, 148 (La. 1993).

The prior criminal acts by Petitioner did not demonstrate intent to commit the present offense. In addition, the facts of the prior conviction were not so similar to the facts in the case at bar to show intent. In the prior conviction, an undercover officer went to Petitioner's residence and purchased crack cocaine.[28] In the instant case, Petitioner was alleged to have drove into neighborhoods and sell cocaine out of a vehicle. Thus, it is clear that the improper purpose and effect of the other crimes in this case was merely to portray Petitioner in the worst possible light, to prove that he was a man of bad character and to show that on the day he was riding in the Xterra that was being followed by police, he acted in conformity with his bad character. The admission of other crimes evidence was a grave error, which was not harmless beyond a reasonable doubt.

---

[28] (R. P. 730)

In determining whether a harmless error has occurred, Louisiana has adopted the federal test announced in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Chapman* set forth a practical guide for determining whether substantial rights of the accused have been violated. *State v. Gibson*, 391 So. 2d 421 (La. 1980).

Furthermore, *Chapman* tests whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24; 87 S. Ct. at 828. *Chapman* further holds that an error does not "contribute" to the verdict when the erroneous trial feature in unimportant in relation to everything else the jury considered on the issue. *Yates v. Evatt*, 500 U.S. 391, 403, 111 S. Ct. 1884, 1893, 114 L. Ed. 2d 432 (1991).

Chapmen was refined in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). The *Sullivan* inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id., 113 S. Ct. at 2081. The Louisiana Supreme Court adopted the *Sullivan* refinement of *Chapman*. See *State v. Code*, 627 So.2d 1373, 1384 (La. 1993).

It cannot be convincingly argued that this erroneously admitted other crimes evidence was unimportant in relation to everything else at trial: the State was

20

unable to prove the identity of contents of the refuse discarded form the Xterra, the evidence did not prove that Petitioner sold cocaine to the unidentified female or Mr. Rolston, there was no evidence as to the amount of cocaine allegedly discarded, and the amount of cocaine found in the Xterra was consistent with personal use. Thus, it is impossible in this case to find that the guilty verdict was surely unattributable to the erroneous admission of the evidence of Petitioner's prior conviction for distribution of cocaine. The weakness of the case in chief made the inadmissible evidence regarding Petitioner's prior conviction for distribution of cocaine all the more important and devastating and, for that reason, beyond the reach of curative powers of harmless error analysis. This error requires this Court to reverse the conviction and remand for a new trial.

## CONCLUSION

**28 USCS § 2254(d)(1)** provides that a state prisoner's petition for a Writ of Habeas Corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision that was "contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States". The "contrary to" and "unreasonable application" clauses have independent meaning. Thus, **28 USCS § 2254(d)(1)** defines two categories of

21

cases in which a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state proceedings.  A federal court may grant a Writ of Habeas Corpus if the relevant state court decision that was either; (1) contrary to clearly established federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

Petitioner has met the **28 USCS § 2254(d)(1)** requirements that the United States Congress has set out for state prisoners to obtain federal habeas corpus relief.

The State of Louisiana in its decision to affirm Petitioner's conviction results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

## PRAYER FOR RELIEF

After premises being considered the Petitioner prays for a Judgment and Order decreeing that Petitioner is entitled to a Writ of Habeas Corpus and the State of Louisiana's decision affirming the judgment of conviction be reversed and any other relief as this Honorable Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___/ / 12 / / 7___ .
        (date)

Respectfully submitted,

S/ _____

Prentiss Arnold Wallace [#]570521
BD1-19 WNC
P.O. Box 1435
Winnfield, Louisiana 71483

23

## PROOF OF SERVICE

I, Prentiss Arnold Wallace, do hereby state that I have caused to be mailed one copy of the foregoing to the Clerk of Court for the Parish of St. Tammany at P.O. Box 1090 in Covington, Louisiana 70434 and one copy to the Attorney General of Louisiana after having placed same under separate cover and attaching (pre-paid) sufficient first class postage, and causing same to be mailed on this _____/_____ day of ____/ 2_____, 2017.

S/ _Prentiss Wal_____

24

# APPENDICES

# APPENDIX A

Appellate Brief

**Filed:** August 24, 2015

Court of Appeal, First Circuit
Order Number: 2015 9454
Received: 8/24/2015 10:31:00 AM
Paid: None

2015 KA 1219
Court of Appeal, First Circuit
Filed: 8/24/2015
Postmarked:
Received: 8/24/2015

**IN THE**
**COURT OF APPEAL, FIRST CIRCUIT**
**STATE OF LOUISIANA**

---

**No. 2015-KA-1219**

---

**STATE OF LOUISIANA,**
                                         **Appellee**

**versus**

**PRENTISS ARNOLD WALLACE,**
                                         **Appellant**

---

**CRIMINAL APPEAL**

---

**ON APPEAL FROM THE 22ND JUDICIAL DISTRICT COURT**
**IN AND FOR THE PARISH OF ST. TAMMANY,**
**STATE OF LOUISIANA, THE HONORABLE ALLISON H. PENZATO,**
**JUDGE PRESIDING, DOCKET NO. 540649**

---

**ORIGINAL BRIEF ON THE MERITS ON BEHALF OF**
**DEFENDANT/APPELLANT, PRENTISS ARNOLD WALLACE**

---

**RESPECTFULLY SUBMITTED,**

**LOUISIANA APPELLATE PROJECT**

**Cynthia K. Meyer**
**La. Bar No. 17707**
**P. O. Box 23121**
**New Orleans, LA 70183**
**Telephone (504) 275-4475**
**Attorney for Appellant**

TIMELY

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................. ii

JURISDICTION...................................................... 1

STATEMENT OF THE CASE.......................................... 1

ASSIGNMENT OF ERRORS.......................................... 2

ISSUES PRESENTED............................................... 2

STATEMENT OF THE FACTS........................................ 2

SUMMARY OF ARGUMENT.......................................... 4

ARGUMENT........................................................ 5

    ASSIGNMENT OF ERROR NO. 1................................. 5
    ASSIGNMENT OF ERROR NO. 2................................. 11

CONCLUSION...................................................... 14

CERTIFICATE..................................................... 15

APPENDIX:
    Minute Entry of Sentencing

## TABLE OF AUTHORITIES

### CONSTITUTIONS

Louisiana Constitution, Article V, § 10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### STATUTES

Louisiana Code of Evidence, Article 404(B). . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Louisiana Revised Statute 14:10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Louisiana Revised Statute 14:27. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Louisiana Revised Statute 15:438. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Louisiana Revised Statute 40:964. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Louisiana Revised Statute 40:967. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

### CASES

Chapman v. California,  386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). . . . 12

Jackson v. Virginia, 443 U. S. 302, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979). . . . . . 5

State v. Abercrombie, 375 So. 2d 1170 (La. 1979). . . . . . . . . . . . . . . . . . . . . . . 12

State v.  Code, 627 So. 2d 1373, 1384 (La. 1993). . . . . . . . . . . . . . . . . . . . . . . . 13

State v. Cummings, 46,038 (La. App. 2d Cir.1/26/11), 57 So.3d 499, writ denied, 11-0341 (La. 6/17/11), 63 So.3d 1037. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

State v. Gibson, 391 So. 2d 421 (La.1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Housley, 04-347 (La. App. 5 Cir. 9/28/04), 884 So. 2d 1204. . . . . . . . . . . 5

State v.  Lewis, 48,373 (La. App. 2d Cir.9/25/13), 125 So.3d 482. . . . . . . . . . . . 10

State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78. . . . . . . . . . . . . . . . . . 5, 6

State v. Nelson, 46,915 (La. App. 2 Cir. 2/29/12), 86 So. 3d 747. . . . . . . . . . . . . 6

State v. 97-1119 (La. App. 3 Cir. 6/17/98), 716 So. 2d 120. . . . . . . . . . . . . . . . . 10

State v. Prieur, 277 So. 2d 126, 128 (La. 1973). . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Stephens, 47,978 (La. App. 2d Cir.5/29/13), 114 So.3d 1265, writ denied, 13-1551 (La.1/17/14), 130 So.3d 342. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sullivan v. Louisiana, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993).  13

Yates v. Evatt,500 U.S. 391, 403,111 S. Ct. 1884, 1893, 114 L.Ed. 2d 432 (1991)13

## JURISDICTION

Jurisdiction in this case vests in this Honorable Court pursuant to the provisions of Article V, § 10 of the Louisiana Constitution.

## STATEMENT OF THE CASE

On November 4, 2013, Prentiss Wallace was arraigned and pled not guilty to a bill of information charging him with possession of cocaine in violation of La. R.S. 40:967C. (R. P. 1). On May 23, 2014, the bill was amended to charge Mr. Wallace with possession with intent to distribute cocaine in violation of La. R.S. 40:967A. (R. P. 42). On June 16, 2014, Mr. Wallace entered a plea of not guilty to the amended bill. (R. P. 11). On July 14, 2014, the State filed a Notice of Intent to Use Evidence of Other Crimes. (R. P. 68). On July 15, 2014, the trial court determined that the other crimes evidence was inadmissible. (R. Pp. 15, 162). Trial began immediately thereafter. (R. P. 17). Trial concluded on July 16, 2014 and after more than six hours of deliberation, the jury was deadlocked. (R. Pp. 21, 485). The trial judge declared a mistrial. (R. P. 485). On July 22, 2014, the State filed a Notice of Intent to Use Evidence of Other Crimes. (R. P. 91). The other crimes evidence consisted of the same evidence that the court had previously held inadmissible. However, on October 13, 2014, the trial court determined that this same other crimes evidence, that it had previously held inadmissible, was admissible. (R. P. 506). On January 14, 2015, Mr. Wallace rejected the State's offer of plea bargain. (R. P. 515). The matter immediately proceeded to trial. (R. P. 522). At the conclusion of trial, the jury found Mr. Wallace guilty of the responsive verdict of attempted possession with intent to distribute cocaine . (R. P. 830). On February 9, 2015, the trial court denied Mr. Wallace's motions for post-verdict judgment of acquittal and new trial. (R. P. 837). Mr. Wallace was arraigned on a multiple bill of information, to which he stood silent. (R. Pp. 839,

1

840).  On May 26, 2015, after denying Mr. Wallace's motion to quash the multiple

bill, the trial court adjudicated Mr. Wallace a third felony offender.  (R. Pp. 851,

860).  On that same date, Mr. Wallace was sentenced to 30 years imprisonment.

(R. Pp. 37, 862).  The trial court denied Mr. Wallace's Motion for Reconsideration

of Sentence.  (R. P. 863).  Mr. Wallace now appears before this court on original

appeal.

## ASSIGNMENTS OF ERRORS

### Assignment of Error No. 1:

1.  The evidence is insufficient to support the verdict of attempted possession with
attempt to distribute cocaine.

### Assignment of Error No. 2:

2.  The trial court erred in admitting other crimes evidence.

## ISSUES PRESENTED

I.  Whether the evidence is insufficient to support the verdict of attempted
possession with attempt to distribute cocaine.

II.  Whether the trial court erred in admitting other crimes evidence.

## STATEMENT OF THE FACTS

In 2009, Mr. Wallace sold crack cocaine to an undercover police officer.  (R.

P. 730).  He pled guilty to this offense.  (R. P. 732).

On September 5, 2013 police received a report that two people in the Lincoln

Park and Pontchartrain Drive areas of Slidell were selling crack cocaine from a

blue Nissan Xterra with an Alabama license plate.  (R. P.663).  Detective Dennis

Bush went to the area and noticed a blue Xterra.  (R. P. 663).  The Xterra pulled

over off of Pontchartrain Drive, and a female came up to the driver's side of the

vehicle on foot.  (R. P. 664).  Detective Bush was suspicious of this activity and

notified other officers to try to determine if the occupants of the Xterra were

"dealing drugs."  (R. P. 664).  The Xterra proceeded to the Westchester

neighborhood.  (R. P. 664).  According to Detective Bush, Mr. Wallace exited the

passenger side of the Xterra and walked over to a silver Saturn parked in the

driveway of a residence.  (R. P. 664).  There was a hand-to-hand transaction

between Mr. Wallace and a female seated in the driver's seat of the Saturn.  (R. P.

664).  Mr. Wallace then got back into the Xterra and left.  (R. P. 664).

Detective Bush followed the Saturn, while other officers followed the Xterra.

(R. P. 665).  The Saturn pulled into the parking lot of a gas station and officers

approached the driver, identified as Lindsay Rolston.  (R. P. 766).  Ms. Rolston

explained that Mr. Wallace is a friend of her boyfriend.  (R. P. 766).  As he was

passing in front of her residence, he stopped to say hello.  (R. P. 767).  Ms. Rolston

asked Mr. Wallace for a cigarette, which he gave to her.  (R. P. 767).  Ms. Rolston

lit the cigarette, then got in the car and drove to the gas station to buy cigarettes,

since she was out of cigarettes.  (R. P. 768).  Police searched Ms. Rolston's car and

purse.  (R. P. 768).  Xanax pills and a cellophane bag containing cocaine residue

were discovered in Ms. Rolston's purse.  (R. P. 769).

Meanwhile, several other officers followed the Xterra.  (R. Pp. 679, 694,

703, 738).  At least 12 officers were involved in the pursuit of the Xterra.  (R. P.

699).  As the Xterra drove on the "service road" by several car dealerships, "small

objects like trash" were "coming out of the window."  (R. P. 709).  Another officer

described the discarded items as "clear cellophane with a white substance in it that

we believe to be crack cocaine."  (R. P. 694).  This discarded refuse was never

recovered by police.  (R. P. 754).  Police admitted that they did not know what was

in the discarded items.  (R. P. 690).

The Xterra proceeded to the "Michoud" exit where the occupants fled.  (R. P.

683).  A piece of cellophane that looked like "the bottom of a cigarette pack" was

discovered under the rear portion of the driver's seat of the Xterra.  (R. P. 683).

This cellophane tested positive for cocaine residue. (R. P. 722).

Mr. Wallace was arrested and charged with possession of cocaine. (R. P. 39). The bill was later amended to charge Mr. Wallace with possession with intent to distribute cocaine. (R. P. 42). The State filed a motion to introduce evidence of Mr. Wallace's 2009 conviction for distribution of cocaine. (R. P. 68). The trial court found this evidence inadmissible. (R. P. 162). The matter proceeded to trial and the jury was unable to reach a verdict. (R. P. 485). A mistrial was declared. (R. P. 485). The State filed a second motion to introduce the same evidence regarding Mr. Wallace's 2009 conviction for distribution of cocaine. (R. P. 91). The same trial judge then found the evidence admissible. (R. P. 506). The matter proceeded to a second trial in which the jury found Mr. Wallace guilty of the responsive verdict of attempted possession with intent to distribute cocaine. (R. P. 830).

## SUMMARY OF ARGUMENT

The evidence is insufficient to support a verdict of attempted possession with intent to distribute cocaine. The refuse allegedly discarded from the Xterra was never recovered. The record is void of any evidence of the contents of the discarded refuse. Ms. Rolston, who police believed purchased cocaine from Mr. Wallace just before she was stopped, only had a bag containing cocaine residue in her possession. Ms. Rolston did not have any type of paraphernalia in her possession with which to use the cocaine. Additionally, she was followed the entire time between the alleged purchase and the time she was stopped and there was no testimony that she appeared to be using cocaine or was under the influence of cocaine when she was stopped.

The trial court erred in admitting other crimes evidence of Mr. Wallace's prior conviction for distribution of cocaine. The facts of his prior crime were not

4

similar enough to the facts of the case at bar to render this evidence more probative

than prejudicial.  The admission of this evidence was not harmless error as

evidenced by the fact the first trial in which this evidence was excluded resulted in

a deadlocked jury, while the second trial, in which evidence regarding the prior

cocaine conviction was allowed to be introduced, ended with a conviction of

attempted possession with intent to distribute cocaine.

## ARGUMENT

### Assignment of Error No. 1:

**The evidence is insufficient to support the verdict of attempted possession with
intent to distribute cocaine.**

Mr. Wallace was charged with possession with intent to distribute cocaine

however, the jury found him guilty of the responsive offense of attempted

possession with attempt to distribute cocaine.  (R. Pp. 42, 830).  The State not only

failed to prove that the refuse discarded from the Xterra was cocaine, the State also

failed to prove that Mr. Wallace had specific intent to distribute cocaine.  There

was no direct evidence in this case - all of the evidence was circumstantial.

In examining a challenge to the sufficiency of the evidence, the reviewing

court must decide whether, viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found that the state proved the

essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,

443 U.S. 307, 99 S.Ct. 2781, 61 L. Ed.2d 560 (1979); State v. Mitchell, 99-3342

(La.10/17/00), 772 So.2d 78, 82.  In cases involving circumstantial evidence, La.

R.S. 15:438 mandates that "assuming every fact to be proved that the evidence

tends to prove, in order to convict, it must exclude every reasonable hypothesis of

innocence."  In State v. Mitchell, 772 So.2d at 83, the Louisiana Supreme Court

discussed appellate review of such cases:

On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt....

Mr. Wallace was convicted of attempted distribution of cocaine in violation of La. R.S. 40:967(A)(1) and 14:27. La. R.S. 40:967 provides that it shall be unlawful for any person "knowingly or intentionally ... [t]o ... distribute, or dispense, ... a controlled dangerous substance ... classified in Schedule II[.]" Cocaine and its derivatives are listed in Schedule II. La. R.S. 40:964. To present sufficient evidence of distribution of a controlled dangerous substance (CDS), the State must prove the following elements: (1) delivery or physical transfer of the CDS to its intended recipient; (2) guilty knowledge of the CDS at the time of the transfer; and (3) the exact identity of the CDS. State v. Nelson, 46,915 (La. App. 2 Cir. 2/29/12), 86 So. 3d 747, 750.

La. R.S. 14:27A defines an attempt is defined in as: "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended..." La. R.S. 14:10(1) defines specific intent as "intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Thus, to be found guilty of attempted distribution of cocaine, the State must prove that a defendant had a specific intent to distribute a controlled dangerous substance identified as cocaine, and do or omit an act for the purpose of and tending directly toward the accomplishing of this act. See, State v. Housley, 04-347 (La. App. 5 Cir. 9/28/04), 884 So. 2d 1204, 1207. The evidence presented by the State in this case was woefully inadequate to carry this burden of proof.

6

Detective Bush testified that he observed a white female walk up to the driver's side of the Xterra where a "hand-to-hand transaction of some sort followed." (R. P. 664). Detective Bush opined that this was a "possible drug transaction." (R. P. 664). No one followed this white female and Detective Bush did not know "what happened" to her. (R. Pp. 664, 674). Detective Bush followed the Xterra to the Westchester neighborhood where he observed Mr. Wallace walk over "to a silver Saturn, which was in the driveway of a residence, met with a white female who was seated in the driver's seat of the Saturn. A quick hand-to-hand transaction occurs of a small object." (R. P. 664). Mr. Wallace got back into the Xterra and left. (R. P. 665). Detective Bush observed the Saturn leave about 45 seconds to a minute later. (R. P. 665).

Detective Bush followed the Saturn, which pulled into the parking lot of a gas station. (R. P. 665). This white female, later identified as Lindsay Rolston, was stopped and gave officers permission to search her car and purse. (R. P. 665). Seven Xanax pills and a "small plastic bag with the white cocaine residue" were recovered from Ms. Rolston's purse. (R. P. 665). The bag had not been torn open, nor was a twist tie found that would have been used to hold the bag closed. (R. P. 670). Ms. Rolston was not in possession of any items that are normally used to ingest cocaine, such as a straw, razor blade, or rolled up dollar bill. (R. P. 670).

Ms. Rolston was arrested and explained to police that Mr. Wallace, whom she knew, was passing down the street as she was going to get cigarettes. (R. P. 766). She got a cigarette from Mr. Wallace, then went to the store to get more cigarettes. (R. P. 768). Ms. Rolston denied that the cocaine or Xanax came from Mr. Wallace. (R. P. 769).

Meanwhile, Detective Richard Walden followed the Xterra and observed several "items thrown out of it." (R. Pp. 681, 682). Detective Walden admitted

7

that he did not have any idea what was being tossed out of the Xterra. (R. Pp. 685, 690). Although there were several police vehicles following the Xterra at this point, Detective Walden did not stop to look at the items being discarded, nor did he request other officers look at the items being discarded. (R. Pp. 682, 686). There were twelve officers involved in the pursuit of the Xterra. (R. P. 687).

Detective Michael Deckleman was a passenger in one of the cars following the Xterra. (R. P. 693). He saw "some type of clear cellophane with a white substance in it that we believe to be crack cocaine." (R. P. 694). He did not know if anyone went back to look for the evidence that was discarded. (R. P. 699). Detective David Seuzeneau, was driving the car in which Detective Deckleman was riding. (R. P. 703). He did not see what was being discarded from the Xterra. (R. P. 706).

Detective John Cole also participated in the pursuit of the Xterra. (R. P. 752). He never saw anything being thrown out of the Xterra, however, he looked for the refuse discarded from the Xterra later that night and the next morning but did not find anything. (R. Pp. 752, 754).

After the Xterra was stopped, a piece of cellophane that looked "like the bottom of a cigarette pack" was found under the rear portion of the driver's seat. (R. P. 684). This piece of cellophane tested positive for cocaine residue. (R. P. 722). The State attempted to use the piece of cellophane recovered from Ms. Rolston's purse and the piece of cellophane recovered from the Xterra to prove that the refuse being discarded from the Xterra was cocaine. However, this conclusion is not reasonable. Detective Bush followed Ms. Rolston after her contact with Mr. Wallace. He never lost sight of her and stopped her five minutes later. She was not in possession of any paraphernalia that could be used to ingest cocaine, nor was there any evidence that she appeared to be under the influence of cocaine. The

only reasonable conclusion from this evidence is that Ms. Rolston obtained a cigarette or perhaps the Xanax tablets from Mr. Wallace, rather than cocaine. The State presented no evidence to refute this reasonable hypothesis.

The State inferred that the piece of cellophane containing cocaine residue that was found in the Xterra, had made its way back into the Xterra after being discarded. This piece of cellophane was not sealed and did not appear to have been sealed. The State was unable to produce any evidence of the contents of the refuse that was discarded from the Xterra; rather, the State suggests that the refuse that was being discarded from the Xterra was unsealed powdered cocaine. During trial the prosecutor made numerous references to powdered cocaine being like Sweet and Low and as such it could easily be blown away. The State asked the jury to conclude that a drug dealer packaged powdered cocaine for sale without sealing the individual packets. This is not a reasonable conclusion. The only reasonable hypothesis is that at some point prior to the Xterra being searched, the driver discarded the bottom of a cellophane cigarette wrapper under the seat.

The State failed to prove the identity of the refuse discarded from the Xterra. Clearly the jury was confused about the identity of the refuse discarded from the Xterra as evidenced by the jury's question as to whether "any witness [saw] a powdery substance come out of the car" when the refuse was discarded. (R. P. 819). A review of the evidence indicates that the State failed to exclude the reasonable hypotheses that Ms. Rolston obtained something other than cocaine from Mr. Wallace and at some point prior to the Xterra being searched, the driver discarded the bottom of a cellophane cigarette wrapper under the seat.

In addition, to failing to produce any evidence to identify the refuse discarded from the Xterra, the State failed to produce any other evidence that Mr. Wallace had specific intent to distribute cocaine. Five factors are used to

9

determine whether circumstantial evidence is sufficient to prove intent to distribute

a controlled dangerous substance:

(1) did the defendant distribute or attempt to distribute the drug;

(2) was the drug in a form usually associated with distribution;

(3) does the amount of drug create an inference of intent to distribute;

(4) did testimony establish that the amount of drugs found in the defendant's

possession was inconsistent with personal use; and

(5) was there any other evidence of intent to distribute, such as scales or

packaging materials.

State v. Cummings, 46,038 (La. App. 2d Cir.1/26/11), 57 So.3d 499, writ denied,

11-0341 (La. 6/17/11), 63 So.3d 1037.  Other relevant factors considered are street

value and drug dosage.  State v. Stephens, 47,978 (La. App. 2d Cir.5/29/13), 114

So.3d 1265, writ denied, 13-1551 (La.1/17/14), 130 So.3d 342.  Possession by

itself does not constitute intent to distribute unless the quantity is so large as to

preclude any other inference.  State v. Lewis, 48,373 (La. App. 2d Cir.9/25/13),

125 So.3d 482.

As discussed above, there is no evidence that Mr. Wallace distributed

cocaine to the female who walked up to the Xterra or to Ms. Rolston.  The record is

void of any evidence as to amount of cocaine allegedly discarded or any other

evidence of intent to distribute, such as scales or packaging materials.  The residue

of cocaine found on the piece of cellophane under the driver's seat of the Xterra is

not such a large quantity of cocaine as to preclude the inference that the cocaine in

the Xterra was for personal use.

A reviewing court may not disregard its duty to consider the constitutional

sufficiency of the evidence simply because the record contains some evidence that

tends to support each fact necessary to support the crime.  State v. Perkins, 97-1119

(La. App. 3 Cir. 6/17/98), 716 So. 2d 120, 130.   Rather, the court must consider

the record as a whole, just as a rational fact finder would.  Id.  A review of the

record as a whole indicates that the evidence presented by the State is insufficient

to support the verdict of attempted possession with intent to distribute cocaine.

### Assignment of Error No. 2:

### The trial court erred in admitting other crimes evidence.

As pointed out above, Mr. Wallace's first trial ended with a deadlocked jury.

Prior to the first trial, the State filed a Notice of Intent to Use Evidence of Other

Crimes, pursuant to La. C. Cr. P. Art. 720 and La. C.E. art. 404(B).  This evidence

consisted of Mr. Wallace's 2009 conviction for distribution of cocaine.  The trial

judge determined that this evidence was not admissible.  After the first trial ended

in a mistrial, the State again filed a motion to introduce the same other crimes

evidence regarding Mr. Wallace's 2009 conviction for distribution of cocaine.

Despite the other crimes evidence and the facts being exactly the same, this time

the same trial judge found the other crimes evidence was admissible.  Given the

lack of evidence and weakness of the State's case, the prejudicial value of this

evidence clearly outweighed its probative value.  The error in admitting this

evidence is what caused the jury to find Mr. Wallace guilty.

Courts may not admit evidence of other crimes, wrongs or acts of the

defendant in order to show that he or she is a person of bad character who has acted

in conformity therewith.  La. C.E. art. 404 (B)(1).  Evidence of other crimes,

wrongs, or acts is generally inadmissible to impeach the character of the accused.

La. C.E. Art. 404(B).  The State may nonetheless introduce evidence of other

crimes, wrongs or acts if it establishes an independent and relevant reason for its

admissibility such as to prove "motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake or accident, or . . . when it relates to conduct that constitutes an integral part of the act or transaction that it the subject of the present proceeding." La. C.E. Art. 404(B)(1).  Even when other crimes are relevant, the probative value of unrelated offenses must be weighed against their possible prejudicial effect.  State v. Prieur, 277 So. 2d 126, 128 (La. 1973).

The trial judge stated that she allowed the introduction of this other crimes evidence because intent was at issue in this case.  The Supreme Court defined intent in State v. Abercrombie, 375 So. 2d 1170 (La. 1979), wherein the Court stated: "...intent is the purpose to use a particular means to effect such result."  The prior criminal acts by Mr. Wallace did not demonstrate intent to commit the present offense.  In addition, the facts of the prior conviction were not so similar to the facts in the case at bar to show intent.  In the prior conviction, an undercover agent went to Mr. Wallace's residence and purchased crack cocaine. (R. P. 730).  In the instant case, Mr. Wallace was alleged to have drove into neighborhoods and sell cocaine out of a vehicle.  In the instant case, Mr. Wallace was alleged to have sold powdered cocaine.  Thus, it is clear that the improper purpose and effect of the other crimes evidence in this case was merely to portray Mr. Wallace in the worst possible light, to prove that he was a man of bad character and to show that on the day he was riding in the Xterra that was being followed by police, he acted in conformity with this bad character.  The admission of the other crimes evidence was a grave error, which was not harmless beyond a reasonable doubt.

In determining whether a harmless error has occurred, Louisiana has adopted the federal test announced in Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).  Chapman set forth a practical guide for determining whether substantial rights of the accused have been violated. State v. Gibson, 391 So. 2d 421 (La.1980).  Furthermore, Chapman tests whether it appears "beyond a

12

reasonable doubt that the error complained of did not contribute to the verdict

obtained." 386 U.S. at 24; 87 S. Ct. at 828. <u>Chapman</u> further holds that an error

does not "contribute" to the verdict when the erroneous trial feature is unimportant

in relation to everything else the jury considered on the issue. <u>Yates v. Evatt</u>, 500

U.S. 391, 403, 111 S. Ct. 1884, 1893, 114 L. Ed. 2d 432 (1991).

 <u>Chapman</u> was refined in <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 113 S. Ct.

2078, 124 L. Ed. 2d 182 (1993). The <u>Sullivan</u> inquiry "is not whether, in a trial

that occurred without the error, a guilty verdict would surely have been rendered,

but whether the guilty verdict actually rendered in this trial was surely

unattributable to the error." <u>Id.</u>, 113 S. Ct. at 2081. The Louisiana Supreme Court

adopted the <u>Sullivan</u> refinement of <u>Chapman</u>. See <u>State v. Code</u>, 627 So. 2d 1373,

1384 (La. 1993).

 It cannot be convincingly argued that this erroneously admitted other crimes

evidence was unimportant in relation to everything else at trial: The State was

unable to prove the identity of contents of the refuse discarded from the Xterra, the

evidence did not prove that Mr. Wallace sold cocaine to the unidentified female or

Ms. Rolston, there was no evidence as to the amount of cocaine allegedly

discarded, and the amount of cocaine found in the Xterra was consistent with

personal use. Thus, it is impossible in this case to find that the guilty verdict was

surely unattributable to the erroneous admission of the evidence of Mr. Wallace's

prior conviction for distribution of cocaine. The weakness of the case in chief

made the inadmissible evidence regarding Mr. Wallace's prior conviction for

distribution of cocaine all the more important and devastating and, for that reason,

beyond the reach of the curative powers of harmless error analysis. This error

requires this Court to reverse the conviction and remand for a new trial.

## CONCLUSION

For the foregoing reasons, Mr. Wallace's conviction of attempted possession with intent to distribute cocaine should be reversed.  Alternatively, Mr. Wallace's conviction should be set aside and this matter remanded for a new trial.

**RESPECTFULLY SUBMITTED,**

**LOUISIANA APPELLATE PROJECT**

*Cynthia K. Meyer*
**Cynthia K. Meyer**
**La. Bar No. 17707**
**P. O. Box 23121**
**New Orleans, LA 70183**
**Telephone (504) 275-4475**
**Attorney for Appellant**

14

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing brief upon

the State of Louisiana, by mailing a copy of same to:

Ms. Kathryn Landry
P.O. Box 82659
Baton Rouge, LA 70884

and upon Appellant, by mailing a copy of same to:

Mr. Prentiss Wallace DOC # 570521
St. Tammany Parish Jail
P. O. Box 908
Covington, LA 70434-0908

and to the trial court, as follows:

The Honorable Allison Penzato
701 N Columbia St.
Room 2010
Covington, LA 70433

this 24th day of August, 2015

_Cynthia K. Meyer_
Cynthia K. Meyer

## APPENDIX

Tuesday, May 26, 2015

COURT MET THIS DAY AND PURSUANT TO ADJOURNMENT, PRESENT AND

PRESIDING, HER HONOR, ALLISON H PENZATO, JUDGE DIVISION "H"; JULIE

KNIGHT and NICK NORIEA, ASSISTANT DISTRICT ATTORNEYS; RODNEY J.

STRAIN JR, SHERIFF AND MALISE PRIETO, CLERK OF COURT. (James McGuire,

Bailiff and Terry Owens Court Reporter)

540649          STATE OF LOUISIANA

                VS

                PRENTISS ARNOLD WALLACE

The defendant being present in open Court attended by his Counsel Allan C. Breslin and

this matter being on assignment for Motion to Supplemental Discovery, Defense Counsel

stated this matter is satisfied.

This matter also being on assignment for Motion to Quash. Argument was heard on

behalf of the Defense and the State, whereupon, Court noted that there is no statutory or

case law to support Defense Counsel's argument and denied said motion. Defense

Counsel objected and Court noted said objection.

Evidence was heard on behalf of the State with the following named person being sworn

to testify:

        1. Allison Champagne

The State offered a stipulation that Dy. Champagne as an expert in fingerprint analysis

and identification. Defense Counsel accepts said stipulation. Court recognizes the witness

as an expert in the field tendered.

The State at this time offered, filed and introduced into evidence the following items:

        S1- fingerprint card

        S2- docket number 350833

        S3- docket number 473544

The State reset.

Defense Counsel offered, filed and introduced into evidence the following item:

D1- boykin transcript in docket number 348937, which contains docket number 348937,

36

350832, 350833 and 473544

Defense Counsel at this time joined in the introduction of S2 and S3 and submitted the matter to the Court.

Court at this time adjudicated the defendant as a Third Felony Offender under the provisions of Article 15:529.1 of the Code of Criminal Procedure. The defendant having waived all delays in sentencing, Court ordered that the following sentence be imposed:

PRENTISS ARNOLD WALLACE, being over 17 years of age and having been previously found guilty of Attempted Possession with Intent to Distribute Cocaine and further having been found to be Third Felony Offender pursuant to Article 15:529.1, Court sentenced the defendant to serve a period of THIRTY (30) years at hard labor with the Department of Public Safety and Corrections, State of Louisiana.

Court ordered the defendant be given credit for time served and Court advised him that under Article 930.8 of the Louisiana Code of Criminal Procedure he has a period of two (2) years in which to file any and all petitions for post-conviction relief.

Defense Counsel objects to said sentence and Court noted said objection.

Defense Counsel filed a Motion to Reconsider Sentence, whereupon, Court denied.

Defense Counsel objected and Court noted said objection.

Defense Counsel filed a Motion for Appeal and Designation of Record, whereupon, Court granted.

Defense Counsel filed a Motion to Withdraw as Counsel of Record, whereupon, Court granted.


COURT ADJOURNED SINE DIE          MINUTES READ AND APPROVED

_____          _____

Minute Clerk/      Amie L. Wood       JUDGE    DIV "H"    AHP



37

# APPENDIX B

**Judgment:** Louisiana First Circuit Court of Appeal

**Rendered:**  December 23, 2015



Office Of The Clerk
## Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

Christine L. Crow
Clerk of Court

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

### Notice of Judgment and Disposition

December 23, 2015

Docket Number:  2015 - KA - 1219

State Of Louisiana
    versus
Prentiss Arnold Wallace

TO:  Gwendolyn Brown
Louisiana Appellate Project
P. O. Box 64962
Baton Rouge, LA 70896
gwynbrown1@cox.net

Kathryn Landry
Special Appeals Counsel
IEYOUB & LANDRY, L.L.C.
Post Office Box 82659
Baton Rouge, LA 70884
kathilandry@aol.com

Cynthia Kliebert Meyer  Esq.
P.O. Box 23121
New Orleans, LA 70183
ckmeyerlap@gmail.com

Warren LeDoux Montgomery
701 N. Columbia Street
Covington, LA 70433
wmontgomery@22da.com

Hon. Allison H. Penzato
Justice Center
701 N. Columbia
Covington, LA 70433

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

CHRISTINE L. CROW
CLERK OF COURT

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2015 KA 1219

STATE OF LOUISIANA

VERSUS

PRENTISS ARNOLD WALLACE

Judgment Rendered: _____DEC 2 3 2015_____

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 540649, Div. H

The Honorable Allison H. Penzato, Judge Presiding

* * * * *

| | |
|---|---|
| Warren L. Montgomery<br>District Attorney<br>   *and*<br>Kathryn W. Landry<br>Special Appeals Counsel<br>Baton Rouge, Louisiana | Attorneys for Plaintiff/Appellee,<br>State of Louisiana |
| Cynthia K. Meyer<br>Louisiana Appellate Project<br>New Orleans, Louisiana | Attorney for Defendant/Appellant,<br>Prentiss Arnold Wallace |

* * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND DRAKE, JJ.

**DRAKE, J.**

The State charged the defendant, Prentiss Arnold Wallace, by bill of information with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1) (count 1).[1]  The defendant pled not guilty and, following a jury trial, the jury became deadlocked and could not reach a verdict; accordingly, a mistrial was declared.  The State tried the defendant a second time, again only on count 1.  In his second jury trial, the jury found the defendant guilty of the responsive offense of attempted possession with intent to distribute cocaine.  *See* La. R.S. 14:27(D)(3) and La. R.S. 40:979(A).  The defendant filed a postverdict judgment of acquittal, which the trial court denied.  The State filed a habitual offender bill of information, alleging the defendant had prior convictions for possession of cocaine and distribution of cocaine.  A hearing was held on the matter, and the defendant was adjudicated a third-felony habitual offender.  The defendant was sentenced to thirty-years imprisonment at hard labor.  The defendant now appeals, designating two assignments of error.  We affirm the conviction, habitual offender adjudication, and sentence.

## FACTS

On September 5, 2013, Sergeant Dennis Bush, with the Slidell Police Department, received information that the defendant and Leo Charles were selling crack cocaine in the Lincoln Park neighborhood and the Pontchartrain Drive area in Slidell.  Sergeant Bush also had information that the defendant and Charles were in a blue Nissan Xterra with an Alabama license plate.  Sergeant Bush knew the defendant and Charles from previous investigations.  Sergeant Bush's partner, Detective John Cole, was in a separate vehicle patrolling the same area.  A short time later, Sergeant Bush spotted the Xterra and followed it.  Charles was driving

---

[1] The defendant was also charged with distribution of Alprazolam (count 2), possession of Alprazolam (count 3), aggravated flight from an officer (count 4), and aggravated obstruction of a highway (count 5).  The State proceeded to trial on count 1 only.

2

and the defendant was in the front passenger seat. The Xterra pulled over near Nassau Drive. An unknown female approached the driver's side on foot, and the officers observed a quick hand-to-hand transaction between the female and driver. Suspecting he witnessed a drug transaction, Sergeant Bush followed the Xterra and radioed other officers in the area to assist with the mobile surveillance.

Sergeant Bush followed the Xterra to the Westchester neighborhood, where it pulled to the side of the road on Olive Drive. Sergeant Bush watched the defendant get out of the Xterra and walk to the driver's side of a silver Saturn parked in a residence driveway. The defendant conducted what appeared to be a quick hand-to-hand transaction with the driver of the Saturn, later identified as Lindsay Rolston. The defendant got back in the Xterra and left. About forty-five seconds later, Rolston left, traveling in the same direction as the Xterra. Sergeant Bush and his captain followed Rolston, while other officers in the area were instructed to follow the Xterra.

A few miles down the road, Rolston pulled into an Exxon station parking lot, and Sergeant Bush effected a traffic stop. Sergeant Bush asked Rolston if she had drugs in the car and she replied that she did; he asked for permission to search her purse and she consented. Sergeant Bush found in Rolston's purse seven Alprazolam (Xanax) pills and a small plastic bag with cocaine residue on it. The bag, or portion of a baggie was small, and would have held no more than a gram of cocaine.

Detective Richard Walden, with the Slidell Police Department, was one of the officers asked to follow the Xterra. Detective Daniel Seuzeneau and Detective Michael Deckleman, both with the Slidell Police Department, also followed the Xterra. Detective Walden was in an unmarked F-150 truck. Detectives Seuzeneau and Deckleman were in an unmarked Charger, with Detective Seuzeneau driving. The officers were instructed to stop the Xterra. There were some other officers in

3

pursuit, as well, including Detective Cole. On Old Spanish Trail, near the I-10, several officers attempted to stop the Xterra. With lights activated by some marked units, the officers attempted to block the Xterra in the front and in the back. Charles maneuvered around the vehicle in front of him and fled, setting off a high-speed chase.

Charles sped off of Old Spanish Trail onto the service road, traveling the wrong direction on a one-way street. At this point, the defendant began throwing items out of the passenger-side window. Charles made his way onto the interstate (I-10) and headed toward the I-10 twin-span bridges (connecting Slidell and New Orleans). Charles barreled down the bridge, heading toward New Orleans, reaching speeds of 100 miles per hour. By this time, as many as a dozen officers were engaged in the pursuit. When Charles reached New Orleans East, he took the Michoud Boulevard exit. He took a left, which brought him back over the I-10. Just as Charles cleared the overpass, he lost control of the vehicle. The Xterra jumped the curb and left the roadway. It continued to roll through the dirt and grass before coming to a stop near a clearing in the woods. The defendant and Charles had jumped from the Xterra before it had stopped rolling and fled on foot. They were both eventually apprehended. Detective Walden searched the Xterra and found, under the driver's seat, a piece of cellophane containing cocaine residue. The cellophane was likely the bottom portion of a cigarette pack. The defendant did not testify at trial.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues the evidence was insufficient to support the conviction. Specifically, the defendant contends that, while he did possess cocaine, the State failed to prove that he was possessing the cocaine with the intent to distribute it.

4

A conviction based on insufficient evidence cannot stand as it violates Due Process.  *See* U.S. Const. amend. XIV; La. Const. art. I, § 2.  The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).  *See also* La. C.Cr.P. art. 821(B); *State v. Ordodi*, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 660; *State v. Mussall*, 523 So. 2d 1305, 1308-09 (La. 1988).  The *Jackson* standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.  When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence.  *See State v. Patorno*, 2001-2585 (La. App. 1 Cir. 6/21/02), 822 So. 2d 141, 144.

Under La. R.S. 40:967(A)(1), it shall be unlawful for any person knowingly or intentionally to possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II (cocaine, in this case).  A defendant is guilty of distribution when he transfers possession or control of a controlled dangerous substance to intended recipients.  *See* La. R.S. 40:961(14); *State v. Cummings*, 95-1377 (La. 2/28/96), 668 So. 2d 1132, 1135.  To support a conviction for possession with intent to distribute cocaine, the State is required to prove both possession and specific intent to distribute it.  *See State v. Young*, 99-1264 (La. App. 1 Cir. 3/31/00), 764 So. 2d 998, 1006.

Under La. R.S. 14:27(A), an attempt is defined as follows:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall

be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

It is well settled that intent to distribute may be inferred from the circumstances. Factors useful in determining whether the State's circumstantial evidence is sufficient to prove intent to distribute include: (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. *State v. Smith*, 2003-0917 (La. App. 1 Cir. 12/31/03), 868 So. 2d 794, 800.

The defendant in brief concedes there was a piece of cellophane with cocaine residue on it found under the driver's seat of the Xterra. The defendant, asserts, however, that beyond this evidence, the State failed to prove the defendant had the intent to distribute cocaine. According to the defendant, none of the evidence was direct, but only circumstantial. The defendant points out that the State did not prove that the "refuse discarded from the Xterra was cocaine." Following what appeared to be a hand-to-hand transaction between the defendant and Rolston, the vehicle the defendant was in, the Xterra, and Rolston's vehicle were followed by the police. When Rolston was stopped, the police found in her purse a small plastic bag with cocaine residue. The defendant points out that the bag had not been torn open, no twist tie was found, and Rolston was not in possession of any items associated with cocaine use, like a straw, razor blade, or rolled-up dollar bill. Also, the defendant notes, Rolston told the police she only got a cigarette from the defendant, and denied the cocaine came from him. The defendant further points out that actual drugs were never seen being thrown from

6

the window by the defendant. Detective Richard Walden saw "items thrown out of it," but could not tell what they were. The defendant notes that Detective Michael Deckleman saw "some type of clear cellophane with a white substance in it" that he believed to be crack cocaine. Detective John Cole, however, went back to the area where he thought the items were discarded, but did not find anything. The defendant suggests that, while the piece of cellophane found in the Xterra tested positive for cocaine, this did not prove that the refuse thrown from the Xterra was cocaine. According to the defendant, "the State inferred" that the piece of cellophane containing cocaine residue in the Xterra "had made its way back into the Xterra after being discarded." Further, according to the defendant, the residue of cocaine found in the Xterra was not such a large quantity of cocaine so as to preclude the inference that it was for personal use.

Regarding the five *Smith* factors, while the small amount of drugs found was not indicative of an intent to distribute, the first factor did appear to be present in this case, that is, the defendant, prior to the instant offense, had distributed illegal drugs. Also, the cocaine residue found in the clear plastic baggie in Rolston's purse was arguably in a form usually associated with distribution. Further, the lack of paraphernalia suggestive of consumption, such as a crack pipe, found in the Xterra, could indicate the cocaine was not for personal use. *See State v. Keys*, 2012-1177 (La. App. 4 Cir. 9/4/13), 125 So. 3d 19, 28, *writ denied*, 2013-2367 (La. 4/4/14), 135 So. 3d 637.

While what the defendant threw from the window during the two-parish high-speed chase was never identified, Detective Deckleman testified that he was a passenger in the vehicle being driven by Detective Daniel Seuzeneau, and that he was less than one car length from the Xterra (the vehicle the defendant was the passenger in). Detective Deckleman testified that he was very close to the Xterra and that he could see the defendant throwing from the passenger window "some

type of clear cellophane with a white substance in it that we believe to be crack cocaine." Detective Cole testified that as soon as the police turned on their lights and sirens (at the start of the chase), he could see the defendant frantically fooling around with a small item on the back of the seat. According to Detective Cole, the defendant's hand movements were consistent with someone tearing the end off of a baggie. The detective noted that he had seen this kind of movement before.

The jury heard evidence that just prior to the high-speed chase, it appeared the defendant had been involved in two hand-to-hand transactions. The jury further heard evidence that in May of 2010, the defendant had pled guilty to distribution of cocaine. Most importantly, it would seem, Leo Charles, the driver of the Xterra, took about a dozen police officers on a two-parish high-speed chase, refusing to stop. The only reason they stopped in New Orleans was that Charles had lost control of the Xterra. Even then, Charles and the defendant got out of the Xterra and fled on foot. To escape the police in the Xterra, Charles ran a stop sign, ran a red light, traveled the wrong way on a one-way street, and consistently sped well above the speed limit. At the beginning of the chase, before Charles got onto the twin span bridge, the defendant was moving frantically about inside the vehicle and then began throwing items from the open passenger window.

When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *State v. Moten*, 510 So. 2d 55, 61 (La. App. 1st Cir.), *writ denied*, 514 So. 2d 126 (La. 1987). None of the actions by the defendant, before, during, or after the chase, suggest innocent motives. Any rational juror could have reasonably concluded that, given the two apparent hand-to-hand transactions the defendant had just recently engaged in; the high-speed chase; the defendant's attempting to escape on foot after the chase; and the

defendant's criminal history with selling cocaine, that the defendant was not throwing merely trash or non-incriminating items from the Xterra while being chased by the police. It is clear the defendant did not want the police to find what was in the vehicle and sought to dispel any evidence of the apparent contraband he was in possession of before the police could stop them. *See State v. Carter*, 363 So. 2d 893, 896-97 (La. 1978) (where the actions of the defendants during the high speed chase indicated that they were intent on divesting themselves of the heroin by throwing it out of the windows).

Given all of the evidence, especially the testimony of Detectives Deckleman and Cole, and Sergeant Bush, a rational juror could have concluded that the defendant was selling small baggies of cocaine. Cocaine was found in both the Xterra and in the purse of Lindsay Rolston, whom it appeared, according to Sergeant Bush, had engaged in a hand-to-hand transaction with the defendant. When the defendant was tossing items from the window, a rational conclusion could have been that the defendant was ripping open the small baggies of cocaine and letting the wind and the speed dissipate the powdered cocaine. The defendant then tossed the empty (or nearly empty) baggies of cocaine. This would explain why the police did not find any drugs in the area where the defendant had apparently tossed items from the window.

While the defendant suggested in brief that no twist tie was found on Rolston's baggie with cocaine residue and that Rolston was not in possession of any items associated with cocaine use, like a straw or razor blade, a juror could have concluded that the baggie was not sealed with a twist tie, or that it was and that something as small as a twist tie simply was not found by the police because it had been tossed or was somewhere in her car. As Sergeant Bush pointed out, these small corners of baggies that dealers put cocaine in are often twisted closed and tied in a knot. Further, a juror could have concluded that no items were needed to

9

ingest the cocaine; instead Rolston needed only to open the bag and snort its contents directly. As Sergeant Bush pointed out in his testimony, "You can just ingest it from the bag." The defendant also noted in brief that Rolston told the police she only got a cigarette from the defendant, and denied that the cocaine found in her purse came from him. On cross-examination, however, when Rolston was asked how this cocaine got into her car, Rolston stated that she did not know. She also stated that she had used cocaine in the past. A juror could have determined that it simply was not plausible how a person could not know how cocaine came to be in her purse. Thus, having lied about that, a juror could have concluded that Rolston was lying about getting only a cigarette from the defendant.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. *State v. Taylor*, 97-2261 (La. App. 1 Cir. 9/25/98), 721 So. 2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. *See State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So. 2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Quinn*, 479 So. 2d 592, 596 (La. App. 1st Cir. 1985). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Higgins*, 2003-1980 (La. 4/1/05), 898 So. 2d 1219, 1226, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

Since distributing can include the mere delivery of a controlled dangerous substance by physical delivery, *see* La. R.S. 40:961(14), the jury's verdict reflected the reasonable conclusion that the defendant, at the very least, attempted to possess cocaine with the intent to distribute it.  In finding the defendant guilty, the jury clearly rejected the defense's theory of innocence. *See Moten*, 510 So. 2d at 61.

After a thorough review of the record, we find that the evidence supports the jury's verdict.  We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of attempted possession with intent to distribute cocaine. *See State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam).  This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues the trial court erred in admitting other crimes evidence.  Specifically, the defendant contends that evidence of a prior 2010 conviction for distribution of cocaine was not similar to the instant offense and it was introduced only to show he was a man of bad character.

The defendant notes in brief that prior to the first trial, the State sought to introduce the defendant's 2010 conviction for distribution of cocaine as other crimes evidence, pursuant to La. C.E. art. 404(B).  A *Prieur* hearing was held, and the trial court ruled the evidence inadmissible. *See State v. Prieur*, 277 So. 2d 126 (La. 1973).  After the first jury was hung and a mistrial declared, the State again, prior to the second trial, filed a motion to introduce the defendant's 2010 conviction.  Another *Prieur* hearing was held and the trial court found the evidence admissible.  The defendant states in brief, "Despite the other crimes evidence and

the facts being exactly the same, this time the same trial judge found the other crimes evidence was admissible."

At the outset, it should be noted that the trial court did not reverse itself, as suggested by the defendant, but instead issued a different ruling based on an amended, more focused treatment of the issue by the State. At the second *Prieur* hearing (just prior to the second trial), the prosecutor provided the trial court a revised written memo in support of the other crimes evidence, and he revamped his argument at the *Prieur* hearing. The trial court, thus, had many other considerations at the second *Prieur* hearing that it did not have at the first hearing. In its first Notice of Intent to use other crimes evidence, the State cited several cases in support of its position that La. C.E. art. 404(B)(1) permits other crimes evidence when intent, identity, absence of mistake or accident, motive, opportunity, preparation or plan are contested. At the first *Prieur* hearing, defense counsel argued that the defendant's *modus operandi* was dissimilar between the instant case and the case for which the defendant was convicted in 2010. In ruling the other crimes evidence inadmissible, the trial court stated, "Based upon a lack of proof of similarity, the Court finds that prejudicial effect of this particular evidence outweighs the probative value."

In its second Notice of Intent to use other crimes evidence, the State provided a more detailed memorandum of law and focused mainly on the issue of intent. At the conclusion of the second *Prieur* hearing, the trial court took the matter under advisement and, twelve days later, issued the following ruling:

> I had held open a ruling concerning the evidence of other crimes, and I'm prepared to render my ruling at this time.
>
> Prior to the trial herein State filed a motion of intent to use evidence of other crimes pursuant to Louisiana Code of Evidence Article 404(b) and State versus Prieur, 277 So.2d 126 Louisiana 1973 to show the defendant's intent to distribute cocaine. Under Article

12

404(b)1 other crimes evidence may be admissible for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. At least one of the enumerated purposes in Article 404(b) must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible under 404. Before other crimes evidence can be admitted as proof of intent, three prerequisites must be satisfied: The prior acts must be similar, there must be a real and genuine contested issue of intent at trial, and the probative value of the evidence must outweigh it's [sic] prejudice effect. Louisiana Supreme Court has recognized the principal that where the element of intent is regarded as an essential ingredient of the crime charged it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. State versus Day. With regard to the first requirement that act that the act be similar, Julie Boynton testified that in 2009 she purchased cocaine from the defendant Prentiss Wallace. In the instant case Mr. Wallace is on trial for possession with the intent to distribute cocaine. Second, specific intent to distribute cocaine is an essential element of the offense charged. Finally, the Court finds that the probative value of the evidence outweighs its prejudicial effect. Therefore, the Court finds that the evidence is admissible.

Louisiana Code of Evidence article 404(B)(1) provides:

Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy

besides simply showing a criminal disposition. *State v. Lockett*, 99-0917 (La. App. 1 Cir. 2/18/00), 754 So. 2d 1128, 1130, *writ denied*, 2000-1261 (La. 3/9/01), 786 So. 2d 115. A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. *State v. Galliano*, 2002-2849 (La. 1/10/03), 839 So. 2d 932, 934 (per curiam).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.

We find no abuse of discretion in the trial court's ruling that evidence of the defendant's 2010 conviction for distribution of cocaine was admissible at the instant trial. The prerequisites as to the intent exception were satisfied in this case. Before other crimes evidence can be admitted as proof of intent, three prerequisites must be satisfied: 1) the prior acts must be similar; (2) there must be a real and genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh its prejudicial effect. *See* La. C.E. arts. 403 and 404(B); *State v. Day*, 2012-1749 (La. App. 1 Cir. 6/7/13), 119 So. 3d 810, 814-15. Where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. *Id.* at 815; *see also State v. Blank*, 2004-0204 (La. 4/11/07), 955 So. 2d 90, 125-26, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007); *State v. Williams*, 96-1023 (La. 1/21/98), 708 So. 2d 703, 725-26, *cert. denied*, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).

14

In the instant case, Sergeant Bush testified that he observed the defendant get out of the Xterra, walk to Rolston, who was in the driver seat of a silver Saturn, and conduct a quick hand-to-hand transaction with her. At the second (and first) *Prieur* hearing, Detective Julie Boynton, with the St. Tammany Parish Sheriff's Office, testified that she drove to a house in an undercover capacity. The defendant walked up to her window and gave her crack cocaine in exchange for $100.00. Both crimes were clearly similar. They both involved the defendant approaching the driver-side of a vehicle and conducting a hand-to-hand drug transaction with the female driver.

In this case, intent was a genuine issue at trial. In fact, the issue of intent was defense counsel's theory of defense or innocence. While cocaine was found in the Xterra the defendant was in, defense counsel argued at both *Prieur* hearings and his opening statement that the State could not prove the defendant had the requisite intent to distribute. In order to prove the element of intent to distribute, the State had to prove in this case the defendant's subjective specific intent to possess in order to distribute. *See State v. Gordon*, 93-1923 (La. App. 1 Cir. 11/10/94), 646 So. 2d 1005, 1011. Evidence, therefore, of the defendant's involvement in a prior drug delivery was clearly an exception to the general prohibition against evidence of other crimes. *See State v. Jackson*, 2005-923 (La. App. 5 Cir. 3/28/06), 926 So. 2d 72, 78-79, *writ denied*, 2006-1589 (La. 1/8/07), 948 So. 2d 121. Accordingly, the other crimes evidence at issue had an independent relevance to show intent pertaining to the instant offense and was therefore admissible for this purpose under La. C.E. art. 404(B)(1). *See State v. Gatlin*, 2014-298 (La. App. 5 Cir. 10/29/14), 164 So. 3d 891, 896-97. *See also State v. Scott*, 2009-1658 (La. 10/22/10), 48 So. 3d 1080, 1085 (per curiam). That the prior conviction occurred several years before the instant offense had no bearing on its admissibility in this case. Remoteness in time, in most cases, is only

one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility. *State v. Jackson*, 625 So. 2d 146, 149 (La. 1993); *see Day*, 119 So. 3d at 816.

While the defendant was prejudiced by introduction of evidence of his prior conviction, such prejudice did not outweigh the probative value of the evidence. Where the very issue of intent to distribute drugs was challenged, the defendant's prior conviction of distribution of cocaine (rather than just simple possession) aided in the proof of a material issue and had independent relevance in satisfying the intent element of the instant crime of possession with intent to distribute cocaine (rather than just simple possession). Further, in its jury charges following closing arguments, the trial court charged the jury on the limited nature of the other crimes evidence:

> Evidence that the defendant was involved in the commission of offenses other than the offense for which he is on trial, is to be considered only for a limited purpose. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.

*See Gatlin*, 164 So. 3d at 897-98.

Based on the foregoing, evidence of the defendant's prior conviction for distribution of cocaine was admissible. Accordingly, this assignment of error is without merit.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**

# APPENDIX C

**Disposition:** Louisiana Supreme Court

**Rendered:** April 2, 2016

# The Supreme Court of the State of Louisiana

**STATE EX REL. PRENTISS ARNOLD WALLACE**

NO.   2016-KH-0432

**VS.**

**STATE OF LOUISIANA**

— — — — —

IN RE:  Prentiss Arnold Wallace; - Plaintiff; Applying For Writ of Certiorari and/or Review, Parish of St. Tammany,  22nd Judicial District Court Div. H, No. 540649; to the Court of Appeal, First Circuit, No. 2015 KA 1219;

— — — — —

**April 4, 2016**

WRIT NOT CONSIDERED.  Untimely filed pursuant to La.S.Ct. Rule X § 5. Relator may be entitled to seek post-conviction relief pursuant to La.C.Cr.P. art. 924 et seq.

JDH

JTK

JLW

GGG

MRC

SJC

Supreme Court of Louisiana
April 4,2016

Deputy     Clerk of Court
           For the Court

Prentiss Arnold Wallace #570521
Winn Correctional Center
P.O. Box 1435
Winnfield, Louisiana 71-483

LEGAL MAIL



UNITED STATES
POSTAL SERVICE®
USPS TRACKING #

9114 9999 4431 4973 8686 40

Label 400   Jan. 2013
7690-16-000-7948

William W. (Bill) Blevins, Clerk of Court
United States District Court, Eastern District
Hale Boggs Federal Building
500 Poydras St., Room C151
New Orleans, Louisiana 70130



UNITED STATES POSTAGE
PITNEY BOWES
$ 007.15
02  1P
0004706846  JAN 12 2017
MAILED FROM ZIPCODE 71483