**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PRENTISS ARNOLD WALLACE** | **CIVIL ACTION** |
| **VERSUS** | **NO.   17-407** |
| **KEITH DEVILLE, WARDEN** | **SECTION: "I"(5)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Prentiss Wallace, is a convicted inmate currently incarcerated at the Winn Correctional Center in Winnfield, Louisiana.    The State charged Wallace by bill of information with possession of cocaine with intent to distribute.[1]    The first jury trial, held

---

[1] State Rec., Vol. 1 of 6, Bill of Information as amended 5/23/14.    He was initially charged with possession of cocaine, which was later amended to possession of cocaine with intent to distribute.    He was also charged with distribution of Alprazolam (Count 2), possession of Alprazolam (Count 3), aggravated flight from an officer (Count 4), and aggravated obstruction of a highway (Count 5).    The State proceeded to trial only on Count 1.

July 15 and 16, 2014, ended in a mistrial when the jury became deadlocked and could not agree on a verdict.[2]    Following a second jury trial held on January 14 and 15, 2015, Wallace was found guilty of the lesser attempted possession of cocaine with intent to distribute.[3] The State subsequently filed a multiple bill of information.    Wallace filed motions for a new trial and for post-verdict judgment of acquittal, which were denied.    Following a multiple-offender adjudication, he was sentenced as an habitual offender to 30 years imprisonment at hard labor without benefit of probation or suspension of sentence.[4]

On direct appeal, Wallace asserted that the State failed to introduce sufficient evidence to support a conviction for attempted possession with intent to distribute cocaine, and the trial court improperly admitted other-crimes evidence at trial.    On December 23, 2015, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[5]    His motion for a rehearing was subsequently denied on February 22, 2016.    On April 4, 2016, the Louisiana Supreme Court denied his application for a writ of certiorari as untimely pursuant to La. S.Ct. Rule X, § 5.[6]    Wallace filed a motion for reconsideration, arguing that

---

[2] State Rec., Vol. 1 of 6, Minute Entry, 7/16/14.

[3] State Rec., Vol. 1 of 6, Minute Entry, 1/15/15.

[4] State Rec., Vol. 1 of 6, Minute Entry, 5/26/15; *see also* Reasons for Judgment signed 7/1/15.

[5] *State v. Wallace*, 2015-KA-1219 (La. App. 1st Cir. 12/23/15), 185 So.3d 795, reh'g denied (Feb. 22, 2016); State Rec., Vol. 6 of 6.

[6] *State v. Wallace*, 2016-KH-0432 (La. 4/4/16), 190 So.3d 1199; State Rec., Vol. 6 of 6.

his writ application was filed timely within the time afforded from the denial of rehearing by the intermediate appellate court.    On June 3, 2016, the Louisiana Supreme Court granted reconsideration and denied relief.[7]    Wallace did not seek post-conviction relief with the state courts.

On January 12, 2017, Wallace filed his federal application for *habeas corpus* relief.[8]   In his petition, Wallace raises the same two grounds for relief that he raised on direct appeal: (1) the evidence was insufficient to support the verdict of attempted possession with intent to distribute cocaine; and (2) the trial court improperly admitted other-crimes evidence.

The State concedes that Wallace has exhausted his remedies in the state courts and that the federal application is timely.    The State argues that the claims should be dismissed on the merits.[9]

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2);

---

[7]  *State v. Wallace*, 2016-KH-0432 (La. 6/3/16), 192 So.3d 755; State Rec., Vol. 6 of 6.

[8]  Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[9]  Rec. Doc. 10.

*see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

### Facts

The following facts were established at trial and summarized by the Louisiana First Circuit Court of Appeal:

> On September 5, 2013, Sergeant Dennis Bush, with the Slidell Police Department, received information that the defendant and Leo Charles were selling crack cocaine in the Lincoln Park neighborhood and the Pontchartrain Drive area in Slidell. Sergeant Bush also had information that the defendant and Charles were in a blue Nissan Xterra with an Alabama license plate. Sergeant Bush knew the defendant and Charles from previous investigations. Sergeant Bush's partner, Detective John Cole, was in a separate vehicle patrolling the same area. A short time later, Sergeant Bush spotted the Xterra and followed it. Charles was driving and the defendant was in the front passenger seat. The Xterra pulled over near Nassau Drive. An unknown female

approached the driver's side on foot, and the officers observed a quick hand-to-hand transaction between the female and driver. Suspecting he witnessed a drug transaction, Sergeant Bush followed the Xterra and radioed other officers in the area to assist with the mobile surveillance.

Sergeant Bush followed the Xterra to the Westchester neighborhood, where it pulled to the side of the road on Olive Drive. Sergeant Bush watched the defendant get out of the Xterra and walk to the driver's side of a silver Saturn parked in a residence driveway. The defendant conducted what appeared to be a quick hand-to-hand transaction with the driver of the Saturn, later identified as Lindsay Rolston. The defendant got back in the Xterra and left. About forty-five seconds later, Rolston left, traveling in the same direction as the Xterra. Sergeant Bush and his captain followed Rolston, while other officers in the area were instructed to follow the Xterra.

A few miles down the road, Rolston pulled into an Exxon station parking lot, and Sergeant Bush effected a traffic stop. Sergeant Bush asked Rolston if she had drugs in the car and she replied that she did; he asked for permission to search her purse and she consented. Sergeant Bush found in Rolston's purse seven Alprazolam (Xanax) pills and a small plastic bag with cocaine residue on it. The bag, or portion of a baggie was small, and would have held no more than a gram of cocaine.

Detective Richard Walden, with the Slidell Police Department, was one of the officers asked to follow the Xterra. Detective Daniel Seuzeneau and Detective Michael Deckleman, both with the Slidell Police Department, also followed the Xterra. Detective Walden was in an unmarked F–150 truck. Detectives Seuzeneau and Deckleman were in an unmarked Charger, with Detective Seuzeneau driving. The officers were instructed to stop the Xterra. There were some other officers in pursuit, as well, including Detective Cole. On Old Spanish Trail, near the I–10, several officers attempted to stop the Xterra. With lights activated by some marked units, the officers attempted to block the Xterra in the front and in the back. Charles maneuvered around the vehicle in front of him and fled, setting off a high-speed chase.

Charles sped off of Old Spanish Trail onto the service road, traveling the wrong direction on a one-way street. At this point, the defendant began throwing items out of the passenger-side window. Charles made his way onto the interstate (I–10) and headed toward the I–10 twin-span bridges (connecting Slidell and New Orleans). Charles barreled down the bridge, heading toward New Orleans, reaching speeds of 100 miles per hour. By this time, as many as a dozen officers were engaged in the pursuit. When Charles reached New

Orleans East, he took the Michoud Boulevard exit. He took a left, which brought him back over the I–10. Just as Charles cleared the overpass, he lost control of the vehicle. The Xterra jumped the curb and left the roadway. It continued to roll through the dirt and grass before coming to a stop near a clearing in the woods. The defendant and Charles had jumped from the Xterra before it had stopped rolling and fled on foot. They were both eventually apprehended. Detective Walden searched the Xterra and found, under the driver's seat, a piece of cellophane containing cocaine residue. The cellophane was likely the bottom portion of a cigarette pack. The defendant did not testify at trial.[10]

## Analysis

### A. Sufficiency of the Evidence

Wallace claims that the evidence was insufficient to support his conviction for attempted possession of cocaine with intent to distribute. He argues that the State offered no direct evidence at trial; the entire case was circumstantial. He contends the State failed to prove that he ever possessed or attempted to possess cocaine or that he had the specific intent to distribute cocaine.[11]

The Louisiana First Circuit Court of Appeal rejected the claim on direct review as follows:

> In his first assignment of error, the defendant argues the evidence was insufficient to support the conviction. Specifically, the defendant contends that, while he did possess cocaine, the State failed to prove that he was possessing the cocaine with the intent to distribute it.
>
> A conviction based on insufficient evidence cannot stand as it violates Due Process. *See* U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

---

[10] *State v. Wallace*, 2015-KA-1219 (La. App. 1st Cir. 12/23/15), 185 So. 3d at 798-99.

[11] Rec. Doc. 1, p. 24.

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). *See also* La. C.Cr.P. art. 821(B); *State v. Ordodi*, 2006–0207 (La. 11/29/06), 946 So.2d 654, 660; *State v. Mussall*, 523 So.2d 1305, 1308–09 (La. 1988). The *Jackson* standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *See State v. Patorno*, 2001–2585 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144.

Under La. R.S. 40:967(A)(1), it shall be unlawful for any person knowingly or intentionally to possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II (cocaine, in this case). A defendant is guilty of distribution when he transfers possession or control of a controlled dangerous substance to intended recipients. *See* La. R.S. 40:961(14); *State v. Cummings*, 95–1377 (La. 2/28/96), 668 So.2d 1132, 1135. To support a conviction for possession with intent to distribute cocaine, the State is required to prove both possession and specific intent to distribute it. *See State v. Young*, 99–1264 (La. App. 1 Cir. 3/31/00), 764 So.2d 998, 1006.

Under La. R.S. 14:27(A), an attempt is defined as follows:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

It is well settled that intent to distribute may be inferred from the circumstances. Factors useful in determining whether the State's circumstantial evidence is sufficient to prove intent to distribute include: (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. *State v. Smith*, 2003–0917 (La. App. 1 Cir. 12/31/03), 868 So.2d 794, 800.

The defendant in brief concedes there was a piece of cellophane with cocaine

residue on it found under the driver's seat of the Xterra. The defendant, asserts, however, that beyond this evidence, the State failed to prove the defendant had the intent to distribute cocaine. According to the defendant, none of the evidence was direct, but only circumstantial. The defendant points out that the State did not prove that the "refuse discarded from the Xterra was cocaine." Following what appeared to be a hand-to-hand transaction between the defendant and Rolston, the vehicle the defendant was in, the Xterra, and Rolston's vehicle were followed by the police. When Rolston was stopped, the police found in her purse a small plastic bag with cocaine residue. The defendant points out that the bag had not been tom [sic] open, no twist tie was found, and Rolston was not in possession of any items associated with cocaine use, like a straw, razor blade, or rolled-up dollar bill. Also, the defendant notes, Rolston told the police she only got a cigarette from the defendant, and denied the cocaine came from him. The defendant further points out that actual drugs were never seen being thrown from the window by the defendant. Detective Richard Walden saw "items thrown out of it," but could not tell what they were. The defendant notes that Detective Michael Deckleman saw "some type of clear cellophane with a white substance in it" that he believed to be crack cocaine. Detective John Cole, however, went back to the area where he thought the items were discarded, but did not find anything. The defendant suggests that, while the piece of cellophane found in the Xterra tested positive for cocaine, this did not prove that the refuse thrown from the Xterra was cocaine. According to the defendant, "the State inferred" that the piece of cellophane containing cocaine residue in the Xterra "had made its way back into the Xterra after being discarded." Further, according to the defendant, the residue of cocaine found in the Xterra was not such a large quantity of cocaine so as to preclude the inference that it was for personal use.

Regarding the five *Smith* factors, while the small amount of drugs found was not indicative of an intent to distribute, the first factor did appear to be present in this case, that is, the defendant, prior to the instant offense, had distributed illegal drugs. Also, the cocaine residue found in the clear plastic baggie in Rolston's purse was arguably in a form usually associated with distribution. Further, the lack of paraphernalia suggestive of consumption, such as a crack pipe, found in the Xterra, could indicate the cocaine was not for personal use. *See State v. Keys*, 2012–1177 (La. App. 4 Cir. 9/4/13), 125 So.3d 19, 28, *writ denied*, 2013–2367 (La.4/4/14), 135 So.3d 637.

While what the defendant threw from the window during the two-parish high-speed chase was never identified, Detective Deckleman testified that he was a passenger in the vehicle being driven by Detective Daniel Seuzeneau, and that he was less than one car length from the Xterra (the vehicle the defendant was

the passenger in). Detective Deckleman testified that he was very close to the Xterra and that he could see the defendant throwing from the passenger window "some type of clear cellophane with a white substance in it that we believe to be crack cocaine." Detective Cole testified that as soon as the police turned on their lights and sirens (at the start of the chase), he could see the defendant frantically fooling around with a small item on the back of the seat. According to Detective Cole, the defendant's hand movements were consistent with someone tearing the end off of a baggie. The detective noted that he had seen this kind of movement before.

The jury heard evidence that just prior to the high-speed chase, it appeared the defendant had been involved in two hand-to-hand transactions. The jury further heard evidence that in May of 2010, the defendant had pled guilty to distribution of cocaine. Most importantly, it would seem, Leo Charles, the driver of the Xterra, took about a dozen police officers on a two-parish high-speed chase, refusing to stop. The only reason they stopped in New Orleans was that Charles had lost control of the Xterra. Even then, Charles and the defendant got out of the Xterra and fled on foot. To escape the police in the Xterra, Charles ran a stop sign, ran a red light, traveled the wrong way on a one-way street, and consistently sped well above the speed limit. At the beginning of the chase, before Charles got onto the twin span bridge, the defendant was moving frantically about inside the vehicle and then began throwing items from the open passenger window.

When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *State v. Moten*, 510 So.2d 55, 61 (La. App. 1st Cir.), *writ denied*, 514 So.2d 126 (La. 1987). None of the actions by the defendant, before, during, or after the chase, suggest innocent motives. Any rational juror could have reasonably concluded that, given the two apparent hand-to-hand transactions the defendant had just recently engaged in; the high-speed chase; the defendant's attempting to escape on foot after the chase; and the defendant's criminal history with selling cocaine, that the defendant was not throwing merely trash or non-incriminating items from the Xterra while being chased by the police. It is clear the defendant did not want the police to find what was in the vehicle and sought to dispel any evidence of the apparent contraband he was in possession of before the police could stop them. *See State v. Carter*, 363 So.2d 893, 896–97 (La. 1978) (where the actions of the defendants during the high speed chase indicated that they were intent on divesting themselves of the heroin by throwing it out of the windows).

Given all of the evidence, especially the testimony of Detectives Deckleman and Cole, and Sergeant Bush, a rational juror could have concluded that the defendant was selling small baggies of cocaine. Cocaine was found in both the Xterra and in the purse of Lindsay Rolston, whom it appeared, according to Sergeant Bush, had engaged in a hand-to-hand transaction with the defendant. When the defendant was tossing items from the window, a rational conclusion could have been that the defendant was ripping open the small baggies of cocaine and letting the wind and the speed dissipate the powdered cocaine. The defendant then tossed the empty (or nearly empty) baggies of cocaine. This would explain why the police did not find any drugs in the area where the defendant had apparently tossed items from the window.

While the defendant suggested in brief that no twist tie was found on Rolston's baggie with cocaine residue and that Rolston was not in possession of any items associated with cocaine use, like a straw or razor blade, a juror could have concluded that the baggie was not sealed with a twist tie, or that it was and that something as small as a twist tie simply was not found by the police because it had been tossed or was somewhere in her car. As Sergeant Bush pointed out, these small comers [sic] of baggies that dealers put cocaine in are often twisted closed and tied in a knot. Further, a juror could have concluded that no items were needed to ingest the cocaine; instead Rolston needed only to open the bag and snort its contents directly. As Sergeant Bush pointed out in his testimony, "You can just ingest it from the bag." The defendant also noted in brief that Rolston told the police she only got a cigarette from the defendant, and denied that the cocaine found in her purse came from him. On cross-examination, however, when Rolston was asked how this cocaine got into her car, Rolston stated that she did not know. She also stated that she had used cocaine in the past. A juror could have determined that it simply was not plausible how a person could not know how cocaine came to be in her purse. Thus, having lied about that, a juror could have concluded that Rolston was lying about getting only a cigarette from the defendant.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. *State v. Taylor*, 97–2261 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. *See State v. Mitchell*, 99–3342 (La. 10/17/00), 772

So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Quinn*, 479 So.2d 592, 596 (La. App. 1st Cir. 1985). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Higgins*, 2003–1980 (La. 4/1/05), 898 So.2d 1219, 1226, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

Since distributing can include the mere delivery of a controlled dangerous substance by physical delivery, *see* La. R.S. 40:961(14), the jury's verdict reflected the reasonable conclusion that the defendant, at the very least, attempted to possess cocaine with the intent to distribute it. In finding the defendant guilty, the jury clearly rejected the defense's theory of innocence. *See Moten*, 510 So.2d at 61.

After a thorough review of the record, we find that the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of attempted possession with intent to distribute cocaine. *See State v. Calloway*, 2007–2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). This assignment of error is without merit.[12]

The Louisiana Supreme Court denied his related writ application.[13]

Because a sufficiency-of-the-evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

---

[12] State Rec., Vol. 6 of 6, *State v. Wallace*, 185 So.3d at 799-803.

[13] The State notes that although the Louisiana Supreme Court initially found the writ application untimely, it subsequently reconsidered that decision and denied the claims on the merits. *See Harrington*, 562 U.S. at 99. The Court therefore addresses the merits of the claims as argued in the State's response.

U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    Wallace has made no such showing.

Under federal law, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."    *Id.* at 319.    Accordingly, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)) (emphasis added).    Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.    *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").    A federal *habeas*

court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).    Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Additionally, contrary to Wallace's argument, Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal *habeas corpus* proceedings.    In these proceedings, only the *Jackson* standard need be satisfied, even if state law would impose a more demanding standard of proof.    *Foy v. Donnelly*, 959 F.2d 1307, 1314 n. 9 (5th Cir. 1992); *Higgins v. Cain*, Civ. Action No. 09-2632, 2010 WL 890998, at *21 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011); *Williams v. Cain*, Civ. Action No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), *aff'd*, 408 F. App'x 817, 821 (5th Cir. 2011); *see also Coleman*, 132 S.Ct. at 2064 ("Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law.") (citation and internal quotation marks omitted)).

Wallace was charged with possession with intent to distribute cocaine and was convicted of attempted possession with intent to distribute cocaine, a separate but lesser grade of the crime.    La. Rev. Stat. § 40:967; La. Rev. Stat. § 14:27.    Louisiana Revised Statute Section 40:967(A) provides that it is unlawful for a person to produce, manufacture,

distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II (*i.e.*, cocaine). La. Rev. Stat. § 40:964 Schedule II. To obtain a conviction for possession of cocaine with intent to distribute, the State must prove, beyond a reasonable doubt, that the defendant knowingly and intentionally possessed the cocaine and had the requisite intent to distribute it. *State v. Taylor*, 2016-1124, 2016 WL 7030750, at *9 (La. 12/1/16) (citing *State v. Williams*, 16-32 (La. App. 5 Cir. 8/24/16), 199 So.3d 1205, 1212). To be found guilty of attempted possession with intent to distribute cocaine, a defendant must have a specific intent to commit that crime and do or omit an act for the purpose of and tending directly toward the accomplishing of his object. La. Rev. Stat. § 14:27.

One need not physically possess the controlled dangerous substance to violate the prohibition against possession; constructive possession is sufficient. *State v. Gordon*, 93–1922, p. 9 (La. App. 1 Cir. 11/10/94), 646 So.2d 995, 1002. A person not in physical possession of the drug is considered to be in constructive possession of a drug when the drug is under that person's dominion and control. *See State v. Toups*, 01–1875, p. 4 (La. 10/15/02), 833 So.2d 910, 913. A person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. *State v. Gordon*, 93–1922, p. 9 (La. App. 1 Cir. 11/10/94), 646 So.2d 995, 1002.

Narcotics offenses involving possession with intent to distribute require proof of specific intent. *State v. Elzie*, 343 So.2d 712 (La. 1977). Louisiana Revised Statute 14:10(1) defines specific criminal intent as that "state of mind which exists when the

circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."   The intent to distribute may be established by proving circumstances surrounding a defendant's possession which give rise to a reasonable inference of intent to distribute.   *State v. Ramoin*, 410 So.2d 1010 (La. 1981).   Some factors used by Louisiana courts to determine whether circumstantial evidence is sufficient to prove an intent to distribute include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.   *State v. Hearold*, 603 So.2d 731 (La. 1992).   In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible.   *Id.*

Wallace primarily focuses on the specific intent element with regard to distribution, as thoroughly addressed by the court of appeal.   To the extent he suggests herein that the State failed to prove the element of possession because the evidence was discovered under the rear portion of the *driver's* seat and no witness could say for certain that the refuse he discarded from the vehicle was actually cocaine, Wallace's argument fails.   At trial, the State proved through expert testimony that the substance recovered from the vehicle was

cocaine. The fact that the amount recovered was minimal is not an issue with regard to possession, especially here, where several detectives witnessed Wallace frantically throwing items, described by one detective as "clear cellophane with a white substance," from the car during the pursuit. Furthermore, the evidence sufficed to show that Wallace had knowledge of and attempted to possess that cocaine. He was a passenger in the vehicle in which the cocaine was found and exercised dominion and control over it, as evidenced by his participation in hand-to-hand transactions and his furious attempts to discard cellophane bags from the moving vehicle, as personally witnessed and described by detectives. The mere fact that the driver might also be considered to be in possession of the drug is irrelevant because exclusive possession is not required. *See e.g., State v. Ceaser*, 21 So.3d 1122, 1131 (La. App. 3 Cir. 2009) ("[C]onstructive possession requires a showing that the substance was either within the defendant's control and dominion or in the defendant's shared possession with another person").

Wallace specifically disputes that the State proved he had specific intent to distribute cocaine and did or omitted an act for the purpose of and tending directly toward the accomplishing of his object. He contends the State failed to exclude the reasonable hypothesis that he gave Ms. Rolston a cigarette or perhaps Xanax, rather than cocaine, or that the refuse discarded from the vehicle was not cocaine and thus could not be linked to the residue found in Rolston's purse and under the driver's seat of the Xterra. He points to the fact that detectives who witnessed the exchange with Rolston could not say for certain that the item he gave her was cocaine, and Rolston maintained she did not receive cocaine from

Wallace. He also contends there was no evidence that the refuse discarded from the vehicle was cocaine (because it was never recovered), much less was there any evidence that revealed an intention to distribute cocaine, such as a large quantity of drugs, scales or packaging materials.

Again, it bears repeating that on *habeas* review, this Court does not apply the state law "reasonable hypothesis" standard, and instead must apply *Jackson*. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).[14] Here, as evidenced by the court of appeal's detailed and thorough review, there was ample evidence from which jurors could rationally conclude that Wallace intended to distribute the

---

[14] As we have explained in instances where petitioners attempt to rely on the state-law circumstantial evidence rule:

> "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438....To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test.... Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So.2d at 208. The appropriate standard for this Court remains *Jackson* as applied under the parameters of the AEDPA.

> *Underdonk v. Vannoy*, Civ. Action No. 16-55, 2016 WL 7971320, at *7 (E.D. La. Sept. 12, 2016), *report and recommendation* adopted, 2017 WL 318469 (Jan 23, 2017) (Vance, J.)

cocaine, specifically:

> None of the actions by the defendant, before, during, or after the chase, suggest innocent motives. Any rational juror could have reasonably concluded that, given the two apparent hand-to-hand transactions the defendant had just recently engaged in; the high-speed chase; the defendant's attempting to escape on foot after the chase; and the defendant's criminal history with selling cocaine, that the defendant was not throwing merely trash or non-incriminating items from the Xterra while being chased by the police. It is clear the defendant did not want the police to find what was in the vehicle and sought to dispel any evidence of the apparent contraband he was in possession of before the police could stop them. *See State v. Carter*, 363 So.2d 893, 896–97 (La. 1978) (where the actions of the defendants during the high speed chase indicated that they were intent on divesting themselves of the heroin by throwing it out of the windows).

> Given all of the evidence, especially the testimony of Detectives Deckleman and Cole, and Sergeant Bush, a rational juror could have concluded that the defendant was selling small baggies of cocaine. Cocaine was found in both the Xterra and in the purse of Lindsay Rolston, whom it appeared, according to Sergeant Bush, had engaged in a hand-to-hand transaction with the defendant. When the defendant was tossing items from the window, a rational conclusion could have been that the defendant was ripping open the small baggies of cocaine and letting the wind and the speed dissipate the powdered cocaine. The defendant then tossed the empty (or nearly empty) baggies of cocaine. This would explain why the police did not find any drugs in the area where the defendant had apparently tossed items from the window.

> While the defendant suggested in brief that no twist tie was found on Rolston's baggie with cocaine residue and that Rolston was not in possession of any items associated with cocaine use, like a straw or razor blade, a juror could have concluded that the baggie was not sealed with a twist tie, or that it was and that something as small as a twist tie simply was not found by the police because it had been tossed or was somewhere in her car. As Sergeant Bush pointed out, these small corners of baggies that dealers put cocaine in are often twisted closed and tied in a knot. Further, a juror could have concluded that no items were needed to ingest the cocaine; instead Rolston needed only to open the bag and snort its contents directly. As Sergeant Bush pointed out in his testimony, "You can just ingest it from the bag." The defendant also noted in brief that Rolston told the police she only got a cigarette from the defendant, and denied that the cocaine found in her purse came from him. On cross-examination, however, when Rolston was asked how this cocaine got into her

> car, Rolston stated that she did not know. She also stated that she had used cocaine in the past. A juror could have determined that it simply was not plausible how a person could not know how cocaine came to be in her purse. Thus, having lied about that, a juror could have concluded that Rolston was lying about getting only a cigarette from the defendant.

The jury heard testimony from Sergeant Bush who observed Wallace engage in hand-to-hand narcotics transactions. Sergeant Bush retrieved narcotics, including cocaine, immediately after the transactions from one of those participants, Ms. Rolston. He described the small package containing cocaine residue as typical for distribution on the street level.[15] The jury heard testimony from narcotics agent, Julie Boynton, who conducted a controlled buy of crack cocaine from Wallace on a previous occasion that resulted in a conviction for distribution of cocaine.[16] Wallace tried to escape from police, engaging in a high-speed chase. Detective Cole was about two feet from the vehicle and witnessed Wallace frantically manipulating something against the back of the seat; he described the movements as consistent with tearing the end off of a baggie.[17] Numerous officers personally witnessed Wallace throwing items out of the passenger window during their pursuit.[18] Detective Deckleman described the items as some type of clear cellophane containing a white substance believed to be cocaine.[19] After the driver lost control, Wallace then ran on foot

---

[15] State Rec., Vol. 4 of 6, pp. 25-28.

[16] State Rec., Vol. 4 of 6, pp. 90-92.

[17] State Rec., Vol. 4 of 6, pp. 100-104.

[18] State Rec., Vol. 4 of 6, pp. 45-46 (Detective Walden); p. 67 (Detective Seuzeneau).

[19] State Rec., Vol. 4 of 6, p. 55 (Detective Deckleman).

from the vehicle before being apprehended. Police recovered cellophane with cocaine residue from the vehicle and found no evidence in the vehicle to suggest personal use. Stated simply, there was sufficient evidence upon which jurors could indeed rationally conclude, as explained by the Louisiana First Circuit, that Wallace attempted to possess small plastic bags of cocaine packaged for individual sale consistent with an intent to distribute them, but effectively discarded them before being apprehended by police.

The state court's determination under *Jackson* is accorded deference under Section 2254(d). That standard does not permit a federal court to overturn a conviction unless the state court's determination under *Jackson v. Virginia* was not simply incorrect, but so wrong as to be an objectively unreasonable application of *Jackson*. While Wallace's suggested inferences may be entirely reasonable configurations of the evidence of the sort that might persuade some individuals to conclude he was not guilty of attempted possession with intent to distribute cocaine, the mere fact that other potentially reasonable views exist does not mandate federal *habeas corpus* relief. In fact, that potential simply demonstrates that reasonable minds might differ if judging the case *de novo*, which this Court is expressly prohibited from doing on federal *habeas* review. *See Cavazos v. Smith*, 561 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Nor is this Court authorized on federal *habeas*

review to substitute its interpretation of the evidence or reevaluate the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

Here, the state court articulated the proper controlling law and reasonably applied the governing legal principles to the evidence adduced at trial. When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational. For these reasons, Wallace cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### B. Improper Admission of "Other Crimes" Evidence

Wallace next argues that evidence of his other crime (distribution of cocaine) was improperly admitted at trial. On direct appeal, the Louisiana First Circuit denied that claim as follows:

> In his second assignment of error, the defendant argues the trial court erred in admitting other crimes evidence. Specifically, the defendant contends that evidence of a prior 2010 conviction for distribution of cocaine was not similar to the instant offense and it was introduced only to show he was a man of bad character.
>
> The defendant notes in brief that prior to the first trial, the State sought to introduce the defendant's 2010 conviction for distribution of cocaine as other crimes evidence, pursuant to La. C.E. art. 404(B). A *Prieur* hearing was held, and the trial court ruled the evidence inadmissible. *See State v. Prieur*, 277 So.2d 126 (La.1973). After the first jury was hung and a mistrial declared, the State again, prior to the second trial, filed a motion to introduce the defendant's 2010 conviction. Another *Prieur* hearing was held and the trial court found the evidence admissible. The defendant states in brief, "Despite the other crimes evidence and the facts being exactly the same, this time the same trial judge found the other crimes evidence was admissible."
>
> At the outset, it should be noted that the trial court did not reverse itself, as

suggested by the defendant, but instead issued a different ruling based on an amended, more focused treatment of the issue by the State. At the second *Prieur* hearing (just prior to the second trial), the prosecutor provided the trial court a revised written memo in support of the other crimes evidence, and he revamped his argument at the *Prieur* hearing. The trial court, thus, had many other considerations at the second *Prieur* hearing that it did not have at the first hearing. In its first Notice of Intent to use other crimes evidence, the State cited several cases in support of its position that La. C.E. art. 404(B)(1) permits other crimes evidence when intent, identity, absence of mistake or accident, motive, opportunity, preparation or plan are contested. At the first *Prieur* hearing, defense counsel argued that the defendant's modus operandi was dissimilar between the instant case and the case for which the defendant was convicted in 2010. In ruling the other crimes evidence inadmissible, the trial court stated, "Based upon a lack of proof of similarity, the Court finds that prejudicial effect of this particular evidence outweighs the probative value."

In its second Notice of Intent to use other crimes evidence, the State provided a more detailed memorandum of law and focused mainly on the issue of intent. At the conclusion of the second *Prieur* hearing, the trial court took the matter under advisement and, twelve days later, issued the following ruling:

> I had held open a ruling concerning the evidence of other crimes, and I'm prepared to render my ruling at this time.
>
> Prior to the trial herein State filed a motion of intent to use evidence of other crimes pursuant to Louisiana Code of Evidence Article 404(b) and *State versus Prieur*, 277 So.2d 126 Louisiana 1973 to show the defendant's intent to distribute cocaine. Under Article 404(b)1 other crimes evidence may be admissible for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. At least one of the enumerated purposes in Article 404(b) must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible under 404. Before other crimes evidence can be admitted as proof of intent, three prerequisites must be satisfied: The prior acts must be similar, there must be a real and genuine contested issue of intent at trial, and the probative value of the evidence must outweigh it's [sic] prejudice effect. Louisiana Supreme Court has recognized the principal that where the element of intent is regarded as an essential ingredient of the crime charged it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. State versus Day. With regard to the first requirement that act that the act be similar,

Julie Boynton testified that in 2009 she purchased cocaine from the defendant Prentiss Wallace. In the instant case Mr. Wallace is on trial for possession with the intent to distribute cocaine. Second, specific intent to distribute cocaine is an essential element of the offense charged. Finally, the Court finds that the probative value of the evidence outweighs its prejudicial effect. Therefore, the Court finds that the evidence is admissible.

Louisiana Code of Evidence article 404(B)(1) provides:

Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. *State v. Lockett*, 99–0917 (La. App. 1 Cir. 2/18/00), 754 So.2d 1128, 1130, *writ denied*, 2000–1261 (La. 3/9/01), 786 So.2d 115. A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. *State v. Galliano*, 2002–2849 (La. 1/10/03), 839 So.2d 932, 934 (per curiam).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.

We find no abuse of discretion in the trial court's ruling that evidence of the defendant's 2010 conviction for distribution of cocaine was admissible at the instant trial. The prerequisites as to the intent exception were satisfied in this case. Before other crimes evidence can be admitted as proof of intent, three prerequisites must be satisfied: (1) the prior acts must be similar; (2) there must be a real and genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh its prejudicial effect. *See* La. C.E. arts. 403 and 404(B); *State v. Day*, 2012–1749 (La. App. 1 Cir. 6/7/13), 119 So.3d 810, 814–15. Where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. *Id.* at 815; *see also State v. Blank*, 2004–0204 (La.4/11/07), 955 So.2d 90, 125–26, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007); *State v. Williams*, 96–1023 (La.1/21/98), 708 So.2d 703, 725–26, *cert. denied*, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).

In the instant case, Sergeant Bush testified that he observed the defendant get out of the Xterra, walk to Rolston, who was in the driver seat of a silver Saturn, and conduct a quick hand-to-hand transaction with her. At the second (and first) *Prieur* hearing, Detective Julie Boynton, with the St. Tammany Parish Sheriff's Office, testified that she drove to a house in an undercover capacity. The defendant walked up to her window and gave her crack cocaine in exchange for $100.00. Both crimes were clearly similar. They both involved the defendant approaching the driver-side of a vehicle and conducting a hand-to-hand drug transaction with the female driver.

In this case, intent was a genuine issue at trial. In fact, the issue of intent was defense counsel's theory of defense or innocence. While cocaine was found in the Xterra the defendant was in, defense counsel argued at both *Prieur* hearings and his opening statement that the State could not prove the defendant had the requisite intent to distribute. In order to prove the element of intent to distribute, the State had to prove in this case the defendant's subjective specific intent to possess in order to distribute. *See State v. Gordon*, 93–1923 (La. App. 1 Cir. 11/10/94), 646 So.2d 1005, 1011. Evidence, therefore, of the defendant's involvement in a prior drug delivery was clearly an exception to the general prohibition against evidence of other crimes. *See State v. Jackson*, 2005–923 (La. App. 5 Cir. 3/28/06), 926 So.2d 72, 78–79, *writ denied*, 2006–1589 (La. 1/8/07), 948 So.2d 121. Accordingly, the other crimes evidence at issue had an independent relevance to show intent pertaining to the instant offense and was therefore admissible for this purpose under La. C.E. art. 404(B)(1). *See State v. Gatlin*, 2014–298 (La. App. 5 Cir. 10/29/14),

164 So.3d 891, 896–97. *See also State v. Scott*, 2009–1658 (La. 10/22/10), 48 So.3d 1080, 1085 (per curiam). That the prior conviction occurred several years before the instant offense had no bearing on its admissibility in this case. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility. *State v. Jackson*, 625 So.2d 146, 149 (La. 1993); *see Day*, 119 So.3d at 816.

While the defendant was prejudiced by introduction of evidence of his prior conviction, such prejudice did not outweigh the probative value of the evidence. Where the very issue of intent to distribute drugs was challenged, the defendant's prior conviction of distribution of cocaine (rather than just simple possession) aided in the proof of a material issue and had independent relevance in satisfying the intent element of the instant crime of possession with intent to distribute cocaine (rather than just simple possession). Further, in its jury charges following closing arguments, the trial court charged the jury on the limited nature of the other crimes evidence:

Evidence that the defendant was involved in the commission of offenses other than the offense for which he is on trial, is to be considered only for a limited purpose. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.

*See Gatlin*, 164 So.3d at 897–98.

Based on the foregoing, evidence of the defendant's prior conviction for distribution of cocaine was admissible. Accordingly, this assignment of error is without merit.[20]

The Louisiana Supreme Court denied relief without additional stated reasons.

As he argued on direct appeal, Wallace claims that the state court erred in allowing the State to admit evidence of his 2010 conviction for distribution of cocaine. He notes that the same evidence was found inadmissible prior to the first trial, which ended with a

---

[20]    *State v. Wallace*, 185 So.3d at 803-06.

deadlocked jury and mistrial.[21]    Wallace contends the prejudicial evidence was improperly admitted under Louisiana Code of Evidence article 404(B) because the prior criminal act was not similar and did not demonstrate an intent to commit the present offense of possession with intent to distribute cocaine.    In response, the State contends that his purely state law claim is not cognizable, and regardless, because there is no clearly established federal law, as determined by the United States Supreme Court, governing the admission of other-crimes evidence, the state-court decision cannot be contrary to, or an unreasonable application of, established federal law.

Initially, to the extent Wallace contends the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal *habeas* review.[22]    *See Swarthout v. Cooke*, 526 U.S. 216, 219 (2011) (federal *habeas* review does not lie for errors of state law). *Habeas corpus* review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.    *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).    Federal courts will not review the propriety of state-court evidentiary rulings unless the alleged error renders the criminal proceeding so

---

[21]    *See* State Rec., Vol. 1 of 6, Rule 404(B) Hearing Transcript (July 14, 2014), p. 162. *See also* State Rec., Vol. 3 of 6, Rule 404(B) Hearing Transcript (October 1, 2014); Transcript (October 13, 2014 - Ruling).    As the court of appeal noted, the second hearing included "a different ruling based on an amended, more focused treatment of the issue by the State." *Wallace*, 185 So.3d at 803.

[22]    He cites federal law only for the proposition that the trial court's error under state law cannot be considered harmless.    Rec. Doc. 1, p. 34.

fundamentally unfair as to violate due process. *Lisenba v. People of the State of California*, 314 U.S. 219, 236–37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (*Habeas* review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.). In keeping with this principle, the United States Court of Appeals for the Fifth Circuit has stated that a petitioner can obtain federal *habeas corpus* relief only if evidence is erroneously admitted and "played a crucial, critical, and highly significant role in the trial." *Gonzales*, 643 F.3d at 430 (quotation omitted). Under this standard, a *habeas* petitioner must establish that the evidence was both erroneously admitted and prejudicial. *McClain v. Cain*, Civil Action No. 14-1452, 2015 WL 4509666, at *13 (E.D. La. July 24, 2015).

Whether evidence is admitted or excluded contrary to the Due Process Clause is a mixed question of law and fact. *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *see Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000) (issues of due process present mixed questions of law and fact.). On *habeas* review, a federal court must determine if the state courts' denial of relief on the issue was contrary to or involved an unreasonable application of Supreme Court precedent.

Wallace has not established a due-process violation for several reasons: (1) he has not properly asserted the claim; (2) he has not shown any error in admitting the other crimes evidence; and (3) he has not identified any Supreme Court precedent in order to establish that the state courts' determination is contrary to, or an unreasonable application of, clearly established federal law.

First, a review of his state and federal applications demonstrates that he has never asserted a federal due-process claim based upon alleged improper admission of other crimes evidence. As discussed above, he asserts only a non-cognizable state-law claim herein (*i.e.*, that the state courts misapplied state evidentiary law).

Second, he has not demonstrated that the other-crimes evidence was erroneously admitted. The Louisiana First Circuit held that the evidence plainly satisfied the prerequisites for the intent exception under Rule 404(B), and that the resultant prejudice did not outweigh the probative value of the evidence. The Louisiana Supreme Court similarly denied relief without providing additional reasons. Indeed, Louisiana law has long held that, in prosecutions for possession with intent to distribute drugs, evidence of prior drug transactions is probative and admissible to establish the accused's intent to distribute drugs. *State v. Taylor*, 2016 WL 7030750, at *17-19 (La. 12/1/16) (affirming trial court's ruling regarding admissibility of defendant's prior 1999 conviction for possession with intent to distribute cocaine at trial on 2014 charge of possession with intent to distribute cocaine and conspiracy to distribute cocaine) (citing *State v. Hill*, 11-2585 (La. 3/9/12), 82 So.3d 267 (per curiam) ("In a prosecution for possession of contraband drugs with intent to distribute, evidence of prior acts of distribution is admissible on the question of specific intent"); *State v. Knighten*, 07-1061 (La. 11/16/07), 968 So.2d 720, 721; and *State v. Grey*, 408 So.2d 1239, 1242 (La. 1982). The Louisiana Supreme Court in *Taylor* reiterated the highly relevant and probative nature of such prior acts to prove the element of specific intent for crimes of possession with intent to distribute. Thus, contrary to

Wallace's argument, the evidence was not admitted to impugn his character or depict him as a bad man.     Instead, the evidence was independently relevant and properly admitted to aid in proving a material issue essential to the charge (*i.e.*, the element of specific intent).     As determined by the state courts, the evidence was plainly admissible under Louisiana law. Because he has not demonstrated any error in the admission of the evidence, he therefore "has no basis for any alleged due process violation."     *See McClain v. Cain*, Civil Action No. 14-1452, 2015 WL 4509666, at *14 (E.D. La. July 24, 2015).     Absent any grounds to support a due-process violation, Wallace has failed to present a cognizable basis for federal *habeas corpus* relief.

And finally, even assuming he had stated a cognizable basis for federal relief, Wallace cites no controlling Supreme Court precedent for the proposition that the admission of prior crimes evidence to prove intent, whether erroneous or not, violates due process.     *See, e.g.*, *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009); *Martinez v. Adams*, No. CV 09-3225-MMM (JEM), 2010 WL 2674429, at *6-7 (C.D. Cal. Apr. 29, 2010), *report and recommendation adopted*, 2010 WL 2674424 (June 30, 2010); *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) ("Because only Supreme Court jurisprudence provides 'clearly established Federal law' under section 2254(d), where Supreme Court jurisprudence 'gives no clear answer to the question presented, let alone one in petitioner's favor, it cannot be said that the state court unreasonably applied clearly established federal law.' ") (citation, alterations omitted).     Absent controlling Supreme Court precedent on the issue, the state courts' determination cannot be said to be contrary to, or an unreasonable application of,

clearly established federal law. Accordingly, for the reasons expressed, Wallace is not entitled to relief on this claim.

**RECOMMENDATION**

**IT IS RECOMMENDED** that Wallace's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[23]

New Orleans, Louisiana, this 25th day of April, 2017.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[23] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.